CASE NO. 22-2080

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

KIMBERLY CONNORS

*Appellant*

vs.

MERIT ENERGY COMPANY, LLC

*Appellee*
_____

Appeal from the United States District Court for the Western District of
Arkansas, Fort Smith, U.S.D.C. No. 2:20-cv-02217-PKH
(*Kimberly Connors, Plaintiff v. Merit Energy Company, LLC, Defendant*)
The Honorable P. K. Holmes, U.S. District Judge

_____

**APPELLANT'S BRIEF**
_____

**Jeremy B. Lowrey**
Attorney at Law
Post Office Box 153
Sheridan, Arkansas 72150

Phone:               870-329-4957
Facsimile Number: 479-222-1459
Email:               jlowrey@centerlane.org

ATTORNEY FOR APPELLANT KIMBERLY CONNORS

# I.   SUMMARY OF THE CASE

Appellant Connors Appeals from the District Court's grant of Appellee's motion for summary judgment on issues involving gender and age discrimination in hiring under Title VII, the AEDA, and pendent claims under the Arkansas Civil Rights Act.  Appellant submits that the District Court relied heavily on post hoc justifications that were not within the knowledge of the hiring personnel at the time of the decisions, and failed to give Appellant the benefit of a reading of controverted facts in the light most favorable to Appellant.  Appellant submits that facts presented in the District Court, when taken in a light most favorable to the non-moving party, would clearly permit inference that the non-discriminatory motives asserted for Appellant's non-hiring were pretextual.


ORAL ARGUMENT IS NOT REQUESTED:      This case turns entirely on review of the summary judgment proceedings in District Court.  No hearing was held, and counsel believes this matter is sufficiently developed in pleadings and briefing to permit decision without oral argument.

Appellate Case: 22-2080    Page: 2    Date Filed: 07/11/2022 Entry ID: 5175736

II.  TABLE OF CONTENTS

I.  SUMMARY OF THE CASE ...................................................... ii

II.  TABLE OF CONTENTS ............................................................ iii

III.  TABLE OF AUTHORITIES ...................................................... vi

IV.  JURISDICTIONAL STATEMENT  .......................................... 1

V.  STATEMENT OF THE ISSUES  .............................................. 2

VI.  STATEMENT OF THE CASE ................................................... 3

VII. SUMMARY OF ARGUMENT .................................................. 7

VIII. ARGUMENT .......................................................................... 9

**Introduction – Controverted Facts** .................................. 9

PROPOSITION ONE ........................................................ 20

Ms. Connors presented Evidence of Gender and Age
Discrimination sufficient to trigger a "legitimacy" burden shift,
and this issue was not factually challenged by Appellee Merit, or
ruled on by the District Court

A.  Standard of Review.................................................... 20

B.  Merit Energy presented no evidence challenging the
     allegations by Ms. Connors in her complaint as to
     baseline burden of proof to show age and gender
     discrimination .......................................................... 20

Appellate Case: 22-2080    Page: 3    Date Filed: 07/11/2022 Entry ID: 5175736

PROPOSITION TWO ........................................................ 23

The District Court misinterpreted the factual evidence, and failed
to give Ms. Connors the benefit of relevant summary judgment
standards.

A.     Standard of Review.................................................. 23

B.     When the evidence is taken in the light most favorable to
       Ms. Connors, it simply cannot be said that a reasonable
       jury could not have determined that the "legitimate
       reasons" provided by Merit for Ms. Connors' non-hiring
       were merely a pretext to cover discrimination ........................ 24

PROPOSITION THREE ................................................... 34

       Appellant's ACRA claim should not be dismissed.

A.     Standard of Review.................................................. 34

B.     The ACRA extends civil rights relief to employees
       of non-state employers.............................................. 34

IX     CONCLUSION ........................................................ 36

X      CERTIFICATE OF COMPLIANCE...................................... ix

XI     CERTIFICATE OF COMPUTER COMPLIANCE ............... ix

XII    CERTIFICATE OF SERVICE ................................. x

XIII   ADDENDUM .......................................................... xi
       *[Electronic Addendum Filed Separately Per Court Rule]*

JUDGMENT in *Case No. 2:20-cv-02217-PKH,* Western District of
Arkansas  04/22/2022, [R. Doc. 40 / App. 57]   .............................. ADD 1

OPINION AND ORDER 04/22/2022,  [R. Doc. 39 / App.  49]........ ADD 2

EEOC Dismissal and Notice of Rights [R. Doc 2-1 / App. 16] ......... ADD 10

Appellate Case: 22-2080     Page: 4     Date Filed: 07/11/2022 Entry ID: 5175736

**Copies of Relevant Statutes (per Fed. R. App. P. 28(f))**

Ark. Code Ann. § 16-123-107 ............................................................ ADD 12

**Selected Documents**

Affidavit of Kimberly Connors [R. Doc. 35-1 / App. 125]............... ADD 14

Merit Energy Discovery Production MEC-00000215
[Spreadsheet entry for Kimberly Connors on determination
not to hire] [R. Doc. 31-2 at 25 / App. 293] ...................................... ADD 20

Merit Energy EEOC Response [R. Doc. 28-1 at 5 / App. 65] ........... ADD 21

v

# III.    TABLE OF AUTHORITIES

## CASES

*Anderson v. Family Dollar Stores of Arkansas, Inc*.,
579 F.3d 858 (8th Cir. 2009) .................................................................. 35

*Arraleh v. Cty. Of Ramsey*, 461 F.3d 967 (8th Cir. 2006) ...................... 21, 24

*Barber v. C1 Truck Driver Training LLC,* 656 F.3d 782
(8th Cir. 2011) ...................................................................................... 35

*Brown v. Gaston County Dyeing Machine Company,* 457 F.2d 1377
(4th Cir. 1971) ...................................................................................... 33

*Buettner v. Arch Coal Sales  Co., Inc.,* 216 F.3d 707 (8th Cir. 2000).... 26

*Cherepski v. Apple, Inc.,* 2014 U.S. Dist. LEXIS 97146
(E.D. Ark. July 17, 2014) ....................................................................... 21

*Cicero v. Borg-Warner Auto. Inc.,* 280 F.3d 579 (6th Cir. 2002)
*overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc*.,
557 U.S. 167 (2009) ............................................................................... 33

*Cline v. Catholic Diocese of Toledo,* 206 F.3d 651
*(6th Cir.2000)* ........................................................................................ 27

*Dartmouth Review v. Dartmouth College,* 889 F.2d 13
(1st Cir. 1989) ....................................................................................... 31

*Faulkner v. N. Little Rock Sch. Dist.,* 2020 U.S. Dist.
LEXIS 146418 ....................................................................................... 26

*Fife v. Harmon,* 171 F.3d 1173 (8th Cir. 1999) ..................................... 26

*Fuentes v. Perskie,* 32 F.3d 759 (3d Cir. 1994) ..................................... 34

*Gardner v. Wal-Mart Stores, Inc*., 2 F.4th 745 (8th Cir. 2021) ............. 23

*General Mills Ops., LLC v. Five Star Custom Foods, Ltd.,*

vi

703 F.3d 1104 (8th Cir.2013) ............................................................... 20, 23

*Harmon v. Payne*, 592 S.W.3d 619 (Ark. 2020) ..................................... 35
*Hase v. Mo. Div. of Employment Sec.,* 972 F.2d 893
(8th Cir. 1992) ...................................................................................... 32

*Hilde v. City of Eveleth,* 777 F.3d 998 (8th Cir. 2014) ........................... 21, 24

*Humphries v. CBOCS West Inc.,* 474 F.3d 387 (7th Cir. 2007*)* ............. 33

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817,
36 L.Ed.2d 668 (1973) ............................................................................ 21

*McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352
115 S.Ct. 879, 130 L.Ed.2d 852 (1995) .................................................. 28

*Morgan v. Hilti, Inc.,* 108 F.3d 1319 (10th Cir. 1997) ........................... 34

*Nichols v. Tri–Nat'l Logistics, Inc.,* 809 F.3d 981 (8th Cir. 2016) ......... 20, 23

*Perkins v. Brigham & Women's Hospital*,  78 F.3d 747
(1st Cir. 1996) ...................................................................................... 28

*Pinson v. 45 Dev., LLC*, 758 F.3d 948 (8th Cir. 2014) ........................... 20, 23

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,
120 S.Ct. 2097 (2000) ........................................................................... 27

*Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658,
174 L. Ed. 2d 490 (2009) ....................................................................... 27

*Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725 (8th Cir. 2019) ...... 35

*Rose-Maston v. NME Hosp., Inc.*, 133 F.3d 1104
(8th Cir. 1998) ...................................................................................... 25

*Sabree v. United Bhd. of Carpenters*, 921 F.2d 396 (1st Cir.1990) ....... 28

*Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205
(8th Cir. 2021) ...................................................................................... 25

Appellate Case: 22-2080     Page: 7     Date Filed: 07/11/2022 Entry ID: 5175736

*Stalhut v. City of Lincoln,* 145 F. Supp. 2d 1115 (D. Neb. 2001) .......... 26

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742,
125 L.Ed.2d 407 (1993) ..................................................................... 31

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) ............. 26, 27

*Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507
(8th Cir. 2011) ..................................................................................... 21

*Twymon v. Wells Fargo & Co*., 462 F.3d 925 (8th Cir. 2006) .............. 27

*United States v. Jungers*, 702 F.3d 1066 (8th Cir. 2013) ...................... 34

STATUTES AND RULES

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. §1331 ................................................................................. 1

28 U.S.C. § 1367(a) ........................................................................... 1

42 U.S.C. § 2000e .............................................................................. 1

Ark. Code Ann. § 16-123-101, 107 .................................................... 1, 3, 35

Fed. R. Civ. P. 56(c) ........................................................................... 25

Appellate Case: 22-2080     Page: 8     Date Filed: 07/11/2022 Entry ID: 5175736

## IV.   JURISDICTIONAL STATEMENT

The jurisdiction of the United States District Court for the Western District of Arkansas was invoked under 28 U.S.C. §1331 by the filing a complaint requesting relief pursuant to Title VII (42 U.S.C. § 2000e, et. seq.), Age Discrimination in Employment Act of 1967 (AEDA) (29 U.S.C. § 621, et. seq.), (App. 8/ R. Doc. 2), and pendent state claims under the Arkansas Civil Rights Act of 1993 (Ark. Code Ann. § 16-123-101, *et. seq*.) brought pursuant to 28 U.S.C. § 1367(a). *Id*. The United States District Court for the Western District of Arkansas lies within the territorial boundaries of the Eighth Federal Judicial Circuit.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. This is an appeal from a final decision of the District Court on April 22, 2022 granting the Appellees' Motion for Summary Judgment and dismissing all claims with prejudice. App. 49 and 57 / R. Doc. 39 and 40.  Appellant timely filed her notice of appeal on May 19, 2022 appealing the District Court Judge's Order and Judgment.  App. 58 / R. Doc. 42.  There are no related appeals to this proceeding.

Appellate Case: 22-2080     Page: 9     Date Filed: 07/11/2022 Entry ID: 5175736

# V. STATEMENT OF THE ISSUES

I.  Whether Appellant Connors submitted sufficient evidence to trigger the McDonnell Douglas Corp burden shifting framework.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973)
*Shaffer v. Potter*, 499 F.3d 900 (8th Cir. 2007)

II.  Whether Appellee, Merit Energy, failed to articulate a non-discriminatory motive under applicable summary judgment standards, and whether even if it did so, contravening evidence presented by Appellant Connors sufficient to require submission of the issues here to a jury.

*Fife v. Harmon*, 171 F.3d 1173, 1176 (8th Cir. 1999)
*McKennon v. Nashville Banner Pub. Co*., 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995)
*Hase v. Mo. Div. of Employment Sec*., 972 F.2d 893, 897 (8th Cir. 1992)

III.  Whether, if the Court reverses the trial court on issues regarding non-discriminatory motives, the Arkansas Civil Rights Act claims of Appellant should be reinstated as well.

*Anderson v. Family Dollar Stores of Arkansas, Inc*., 579 F.3d 858 (8th Cir. 2009)
*Rinchuso v. Brookshire Grocery Co*., 944 F.3d 725, 729 (8th Cir. 2019)

Appellate Case: 22-2080   Page: 10   Date Filed: 07/11/2022 Entry ID: 5175736

## VI.  STATEMENT OF THE CASE

### A.  Procedural History

Plaintiff Kimberly Connors filed this action through a complaint filed November 30, 2020. App. 8 / R. Doc. 2.  She alleged causes of action for violation of Title VII of the Civil Rights Act of 1964 based on gender discrimination, violation of the Age Discrimination in Employment Act (ADEA) for discrimination based on age, and pendent state claims for violation of the Arkansas Civil Rights Act of 1993 (ACRA).  16 A.C.A. § 123-101 *et. seq.* and particularly § 123-107(a)(1). *Id.* After dismissal of several named defendants (R. Doc. 15), Appellee Merit filed its answer (App. 18 / R. Doc. 27) on February 6, 2022.   Appellee Merit moved for Summary Judgment on March 10, 2022, and the Court granted summary judgment and dismissed Appellant's claims on April 20, 2022. App. 49, 57 / R. Doc. 39, 40. Appellant timely filed a Notice of Appeal on May 19, 2022.  App. 58 / R. Doc. 42.

### B.  Factual Summary

Kimberly Connors was hired by XTO Energy as a Lease Operator on December 2, 2002. *Connors' Affidavit*, App. 263 / R. Doc. 35-1.  The reports from Connors' annual employee evaluations throughout her nearly 20 years as an XTO Lease Operator show she had been a dedicated, hard-working, and exemplary employee, who consistently met and exceeded expectations and earned regular raises

Appellate Case: 22-2080    Page: 11    Date Filed: 07/11/2022 Entry ID: 5175736

in pay. *Connors Affidavit*, App. 263-265 / R. Doc. 35-1; *Connors Depo*. App. 131 / R. Doc. 28-3 at 7; *Connors Depo. Exhibits* App. 172-197 / R. Doc. 28-3 at 48-73.

During November 2019, 28 of XTO's 29 lease operators, including Connors, applied to work for Merit Energy Company ("Merit") in connection with Merit's purchase of XTO's operations and assets in Ozark, Arkansas. See Merit's Facts, App. 28 / R. Doc. 30 at 1, 14-15. Each applicant participated in an in-office interview as part of the process. Merit's candidate spreadsheet reflects that Connors' in-office interview on November 21, 2019 went well. (*See Merit's Document Production*, App. 269 / R. Doc. 35-2) The spreadsheet notes contain no reference to any negative issues relating to her interview. *Id*.

Another candidate, Mark Andrews, did not interview well and was identified as a candidate to whom an offer would not be given during the initial stages of the candidate-selection process. App. 289 / R. Doc. 35-2 at 21. Additionally, five more of the original 28 candidates elected at some point during the selection process to retire rather than continue as lease-operator candidates with Merit. *Id*. Merit's Tentative Offer spreadsheet of candidates reflected Merit's intention, once the interviews had all been completed, to offer a position to each of the remaining twenty-two lease operator candidates. (App. 271-276 / R. Doc. 35-2 at 3-8).

As of December 2, 2019, Connors was included in the list of "Tentative Offers." App. 275 / R. Doc. 35-2 at 7. Some candidates who had not interviewed

well at the initial stages were given an opportunity to explain themselves or provide Merit with more information for its consideration in their ride-along interviews. For example, Jeff Teague's interview notes initially were "fast pace, tears up vehicles, doesn't repair small items…" App. 269 / R. Doc. 35-2 at 1. At that time, Merit's interview spreadsheet reflected it did not plan to make him an offer. *Id.* Later, his interview notes included the following clarification: "Asked about rushing and driving response back was – his [sic] says roads rough top speed first 3 hours 10 mph… Randy [rode] his route with Giles roads are rough and slow going." App. 275 / R. Doc. 35-2 at 7.

The hiring process was conducted for Merit by Clay Munger and Randy Sanders. Sanders stated in his affidavit that, "Clay Munger and I were involved in advising Merit on how many people we thought would be needed to operate the Assets being purchased," and that "I, along with Clay Munger, directly oversaw the hiring process for the XTO Ozark employees." Sanders Affidavit, App. 257 / R. Doc. 28-4.

Ms. Connors had 18 years of experience as a lease operator for XTO, making her the employee with the longest tenure at XTO of all the lease operators considered for positions with Merit. Connors Affidavit, App. 263 / R. Doc. 35-1. She had an additional eight years of lease operation experience for other companies prior to having been hired by XTO. *Id.* Every lease operator hired by Merit was male. App.

287 / R. Doc. 35-2 at 19.  Ms. Connors ultimately was not hired by Merit on

recommendation by Sanders and Munger.  ADD 20 / App. 293 / R. Doc. 35-2 at 25.

## VII. SUMMARY OF ARGUMENT

This case involves the decision by Appellee Merit not to hire Appellant Connors as a continuation employee on having acquired the oil lease operation with which she was a prior employee from XTO Energy. Appellant submits that the District Court failed to consider the facts here in the light most favorable to Appellant Connors, and also relied heavily on post hoc justifications for her non-hiring presented by Appellee Merit. Particularly, the District Court's reliance on conflict between Ms. Connors and her XTO supervisor was inapposite, as there was no information indicating that Merit's employees had been informed of any such conflict at the time of their hiring decision. Also notably, this conflict testimony was not relied on by Merit in its original EEOC response. The same is true for comments about Ms. Connors's "refusal to work" testified to by one of her competitors for the jobs in question.

Appellant Connor also presented controverting evidence in summary judgment proceedings that showed, *inter alia*, that Merit made notes in its hiring information of who the "younger" male employees were, that Merit's stated reasons for her non-hiring were contradicted by its employees contemporaneous notes, that Merit's hiring employees conducted no systematic review of any prior work history (which would have showed exemplary reviews for Ms. Connor), and presented significant contravening evidence calling into question the credibility of the hiring

7

officers' testimony, and the "uniformity" of the hiring process (particularly the length of the process and the opportunity for explanation and discussion provided to similarly situated male applicants). Appellant submits that a reasonable jury could infer that Merit's claimed "non-discriminatory" reasons for her non-hiring were pretextual from the facts presented.

Appellate Case: 22-2080    Page: 16    Date Filed: 07/11/2022 Entry ID: 5175736

## VIII.  ARGUMENT

**Introduction :**     **Discussion of Controverted Facts in Summary Judgment Proceedings**

The factual issues in this matter regarding whether Merit presented a *prima facie* case in summary judgment for a legitimate basis for her non-hiring turn on the credibility, or lack thereof, of Merit's own personnel, and more specifically almost entirely on the testimony and credibility of Clay Munger.  In support of summary judgment, Merit presented:

- Deposition testimony of Clay Munger – Merit's hiring employee (App. 68 / R. Doc. 28-2);

- The Affidavit of Melanie Lane – the Vice President of Human Resources for Merit Energy Company, LLC at the Ozark Branch (App. 61 / R. Doc. 28-1);

- Deposition testimony of Kimberly Connors – the Plaintiff here (App. 125 / R. Doc. 28-3);

- The Affidavit of Randy Sanders – an Operations Manager for Merit Energy Company, LLC (App. 257 / R. Doc. 28-4);

- The Affidavit of Giles France – a Lease Operator for Merit Energy Company, LLC, who was in direct competition with Ms. Connors for the job openings in question here (App. 260 / R. Doc. 28-5.

All documentary evidence purporting to establish a basis for Ms. Connor's non-hiring was created **after** Ms. Connors filed her EEOC complaint.  See Exhibit 1 to

9

the *Affidavit of Melanie Lane*, App. 66 / R. Doc. 28-1 at 7; *Merit Document Production,* App. 280 / R. Doc. 35-2 at 12.   Merit's contemporaneous notes relating to Ms. Connors interviews do not show any justification for Merit's decision to remove her from the "tentative hire" list and determine not to hire her.   ADD 20 / App. 293 / R. Doc. 35-2 at 25.   Based on the testimony presented and documents produced, no document showing a reason for Ms. Connors non-hiring was created until at least after April 1, 2020, after Ms. Connors' EEOC complaint had been filed, and in response to an email from Melanie Lane, Merit's Vice President of Human Resources, which read:

> Please let me know the reason that we didn't hire Kimberly.  Hopefully you have some notes from her interview that you can share with me.  Ideally, I'd also like an explanation as to what you used as criteria when selecting those individuals that received offers.

*Merit Document Production,* App. 280 / R. Doc. 35-2 at 12.

The only contemporaneous (with the hiring decision) documentation of any evaluation conducted of Ms. Connors by Mr. Munger or Mr. Sanders are their spreadsheet notes from their initial hiring spreadsheet, in which they say:

> 18 years XTO, 54 wells, 48 charts, 6 EFMs, has knowledge, was contract pumper, 2 compressors and Abbott Station.  Was a contract pumper and worked as pumper for Spectrum as a pumper.   Good communicator, dependable.  States may be able to make improve by installing plungers.. currently dropping quire a few soap sticks.   Seems to know her well personalities.  Did have 6 pumping wells that don't run anymore.  Was the vacation relief for 13 years.  Didn't work OK wells or routes.

App. 269 / R. Doc. 35-2 at 1.

Additionally, Ms. Connors presented evidence directly contesting or controverting numerous factual statements by Merit's employees regarding there purported motives in determining not to hire her, and Merit's own statements contain inherent evidentiary contradictions.

## A.    Facts relating to Merit's "uniformly applied" hiring process

Randy Sanders said in his affidavit that he and Clay Munger alone oversaw the hiring process. *Sanders Affidavit*, App. 258 / R. Doc. 28-4 at 2. In her affidavit Melanie Lane, Merit's Vice President of Human Resources at the Ozark Branch, testified that "Merit implemented its own evaluation and hiring process that it applied uniformly to all XTO employees." *Lane Affidavit*, App. 61 / R. Doc. 28-1. Ms. Lane did not testify to **any** direct knowledge of the hiring process that was **actually conducted**, and evidence produced in discovery shows that she only became aware of the conduct and claimed rationales for the process in April of 2020 after an EEOC complaint was filed by Ms. Connors. App. 280 / R. Doc. 35-2 at 12.

It should also be noted that there is no date for Mr. Munger's "reports" to Ms. Lane in her affidavit, (App. 63 / R. Doc. 28-1 at 3) and it is impossible to tell from her statement whether any of the reports from Mr. Munger came prior to the EEOC complaint. However, given Ms. Lane's email subsequent to the complaint's filing, it seems pretty clear that any "report" was made after the EEOC complaint was made

– not contemporaneously with the hiring decision process. See App. 280, R. Doc. 35-2 at 12.

The factual issue of a "uniform hiring process" was very much in conflict based on the evidence presented in summary judgment proceedings. Carl Munger indicated that he had "very little" training from Merit in any standard hiring process. *Munger Depo.* App. 75 / R. Doc. 28-2 at 8. In practice, Merit presented testimony from Munger that the ride along interviews for most candidates lasted one to two hours, and that he believed he spent one to two hours with Kimberly Connors in his ride along. (*Munger Depo.*, App. 28 / Doc. 28-2 at 21). Randy Sanders' affidavit indicates that he conducted a "one hour" ride along with Ms. Connors, and that "nothing about Ms. Connors' ride-along stood out to me, one way or another." *Sanders Affidavit*, App. 258, R. Doc. 28-4 at 2. Mr. Sanders' entire statement on the reason for not hiring Ms. Connors was a conclusory and non-specific statement that, "my decision not to recommend Ms. Connors was based solely on relevant performance issues identified during the hiring process." App. 259 / R. Doc. 28-4 at 3. Mr. Sanders provided absolutely no information as to what those "relevant performance issues" may have been, or any factual support for his conclusion. *Id*.

In response to this "ride along" testimony, Appellant Connors agreed that most candidates received a one to two hour ride along, App. 138 / R. Doc. 28-3 at 14, but testified that her ride-along evaluation conducted by Mr. Munger was cursory

12

and lasted twenty minutes. *Id.* / *Connors Affidavit*, App. 267 / R. Doc. 35-1 at 5. Similarly, her ride-along with Mr. Sanders was also truncated. App. 139 / R. Do. 28-3 at 15. Further, while other employees were given an opportunity to clarify potential problem issues, no problem issues were identified for her, an no inquiry was made to clarify them, nor was she asked any relevant questions about her experience or qualifications. *Connors Affidavit*, Add. 18 / App. 267 / R. Doc. 35-1 at 6; Munger Depo. App. 86, 89 / R. Doc. 28-2 at 19, 22**.** No contemporaneously recorded notes call out any discrepancy or complaint regarding Ms. Connors performance.

Additionally, Carl Munger testified that prior to making his hiring decisions he was not sure he reviewed all the employee applications, that he did not review any document besides the application, and he did not review employee files from XTO, or ask to do so. App. 86 / R. Doc. 28-2 at 19. With regard to interviewing prior foremen and supervisors, Mr. Munger stated that he, did ask them "about the lease operators that reported to them", but he "did not recall" whether some, most, or all of the lease operators came up in the discussion. App. 86, R. Doc. 28-2 at 19. He thought he would have discussed "more than half" of the lease operators. *Id.* He did not recall "asking questions out and out about anybody." App. 91 / R. Doc. 28-2 at 24. In deposition, Mr. Munger had no recollection of whether he had reviewed Kimberly Connors' application as part of his hiring decision. App. 87 / R. Doc. 28-

13

2 at 20. About all he could think of regarding his ride-along with Ms. Connors was that "she took pressures on some of the wells." App. 88 / R. Doc. 28-2 at 21. Merit's representatives did not consider driving records of applicants, output of lease operator wells or actual safety records in making their decisions. *Munger Depo* App. 86, 90, 93 / R. Doc. 28-2 at 19, 23, 26. Applicants provided Merit with copies of their driver's licenses, which included age and gender information. *Conners Affidavit*, ADD 18 / App. 267 / R. Doc. 35-1 at 5.

**B.**  **Facts relating to the District Court's finding of "clashes" between Ms. Connors and her XTO supervisor**

<u>There is simply no evidence in the record that any evidence of conflict (or "clashes") between Ms. Connors and her XTO supervisor James Smith was communicated to, or considered by, Merit's hiring personnel.</u> The District Court, in finding in favor of Merit relied heavily on "clashes" between Ms. Connors and her prior supervisor at XTO in finding that Merit had articulated a legitimate, nondiscriminatory reason for not hiring Appellant Connors. See Court's Order, Appen. 52, R. Doc. 39 at 4. But Merit produced no evidence that either Munger or Sanders relied on any report of any such problems. Nothing in the deposition or affidavits of Merit's hiring personnel evidences any knowledge at the time of Ms. Connor's hiring decision of "clashes" between Ms. Connors and her supervisor, the reason for any such "clashes", or reliance on any supervisor tension as a basis for non-hiring. Mr. Sanders specifically stated that,

> Although **none of Ms. Connors' supervisors said negative things about her**, XTO supervisors did not give me positive reports regarding her performance. Instead, Clay and I noticed that the XTO supervisors were more complimentary about other lease operators they supervised. Ms. Connors XTO supervisors had little to say about her performance, which sent a message to me.

*Sanders Affidavit*, App. 258 / R. Doc. 28-4 at 2 [emphasis added]. In other words, no such "clashes" were reported to him. Notably, he did not detail any specific conversations he had with supervisors, and his statement that "Clay and I noticed" supervisor compliments is inconsistent with Mr. Munger's testimony that any communication he had with supervisors was general at best – not employee specific. App. 91 / R. Doc. 28-2 at 24.

The only conversation reported by Mr. Munger regarding any conversation with Ms. Connors' XTO supervisor Scott Smith was that "He just said that if more soap was dropped down on her route, it would perform better." Munger Depo. App. 91 / R. Doc. 28-2 at 24. Mr. Munger engaged in no follow-up inquiry regarding any of the "soap"-related information, (*Id.*) nor was this listed as a basis for non-hiring in any documentation produced by Merit prior to its summary judgment motion.

Similarly, the only conversation reported by Mr. Munger regarding any report by Mr. France was that "he was soaping [Kimberly's wells] because "he was told to go do it." App. 89 /R. Doc. 28-2 at 22. At the time most of his route was not operating. *Id.* Mr. Munger did not ask if France was responsible for soaping anyone

else's wells or any details of why he was doing this, nor did he testify to having any information from Mr. France regarding any conflict between Ms. Connors and Mr. Scott.  App. 89 / R. Doc 28-2 at 22. Finally, Mr. Munger's and Mr. Anderson's notations in their original spreadsheet state that Ms. Connors is "currently dropping quite a few soap sticks."  App. 275 / R. Doc. 35-2 at 7.

The term "clashes" is quite strong in terms of what Ms. Connors actually testified to, (her specific description of the interaction was that, "Scott was the type of person, 'you're going to do it my way . . . I don't care what the way is, it's going to be my way,' and you know, I'm like 'It's not going to work that way, and let me show you why.'") App. 131 / R. Doc. 28-3 at 7.  She did indicate that she *believed* Mr. Smith would have gotten rid of her if he had cause.  *Id*.

However, in terms of objective evidence, Mr. Smith's actual evaluations of Ms. Connors job performance reflect no concern about any conflict, or any real dissatisfaction with her performance.  In her affidavit in response to summary judgment, Ms. Connors set out direct quotations from her performance evaluations that would have been available to Merit, and the relevant evaluations are attached to her deposition as Exhibit 1.    App. 172-195 /R. Doc. 28-3 at 48-72.  These evaluations of Ms. Connors' work by Mr. Smith can only be characterized as positive.  In the latest 2019 evaluation, Mr. Smith wrote that Ms. Connors, "follows sound safety and environmental practices"; "makes good decisions on routine

16

problems & communicates with others if the problem is beyond her control"; "devotes appropriate attention to all obligations of the position"; "is receptive to instruction, ideas & opinions"; "willingly accepts & carries out instructions"; "is dependable in carrying out instructions. More self-directed activity in well-bore maintenance could be helpful in production." App. 195 / R. Doc. 28-3 at 71-72.

Also nothing in the positions taken by Merit before the EEOC, or at any point prior to Summary Judgment, indicate any reliance on negative employer relationships or "soaping" issues. In its EEOC response process, Merit indicated its reasons for non-hiring were that:

> Following the interview process, it was determined that Ms. Connors was not one of the top 20 candidates for the Lease Operator position. All of the candidates interviewed for the Lease Operator position had prior experience, but the candidates that were offered a job demonstrated a greater enthusiasm for the position, shared process improvement ideas during their interview, and wore their fire resistant clothing (FRC) properly.

App. 66 / R. Doc. 28-1 at 6.

## C.    The "fire-resistant clothing" claim

According to Merit's later positions, Ms. Connors mode wearing her safety gear was a significant issue for Clay Munger. In fact, much of Merit's case comes down to a claim that Ms. Connors was not hired because of an unbuttoned button on her safety gear. See above. Mr. Munger testified that,

> [w]hen I met up with her down there at her location [for the ride along, Ms. Connors] had her FR shirt undone all the way and was wearing a white t-shirt underneath it. And she continued to be like that while we rode around. And

17

> then several times at the office, when we talked about when they would come in for XTO events, or whatever, her shirt was also unbuttoned all the time.

App. 89 /R. Doc. 28-2 at 22. Mr. Munger testified that he communicated this to Randy, *Id*., but Randy Sanders' affidavit contains no reference to this claimed conversation. App. 257 / R. Doc. 28-4. Mr. Munger testified that he did not discuss this alleged safety issue with anyone else, but that it was "one of my main reasons" for not hiring Ms. Connors. App. 89 / R. Doc. 28-2 at 22.

The primary problem with this factual finding is that it is directly controverted by the nature of the safety gear Ms. Connors states she was wearing. There were simply no buttons on the gear to be unbuttoned as Mr. Munger claimed. According to Ms. Connors deposition testimony, "I never wore a buttoned-up shirt. . . my fire-retardant's a pull-over." App. 139 / R. Doc. 28-3 at 15. Ms. Connors stated that, "it's an FRC. It had 'XTO Energy' across it." App. 140 / R. Doc. 28-3 at 16. She stated that she wore a white cotton t-shirt under it, and her FR pants. *Id*. That was all the equipment XTO gave her. *Id*. The "shirt was a safety award. *Id*. So if we won the FR shirts, we could wear them, you know, and so I chose to wear my pullovers because I had turned in my button-ups because when I quit smoking, I gained a lot of weight and so I couldn't wear them. . ." Id.

## D. Information on "enthusiasm" and "suggestions for improvement"

While the District Court found that Ms. Connors "did not have any suggestions" as to how she could improve her well locations, a finding apparently

based on the EEOC filing (App. 66 / R. Doc. 28-1 at 6), and which was apparently presented in support of Merit's "lack of enthusiasm" claim, this is in direct contrast to Merit's own initial notes on Ms. Connor, which provide that Ms. Connors was a "good communicator" and provided improvement suggestions – that she "states may be able to make improve by installing plungers." App. 274 / R. Doc. 35-2 at 7. Additionally, Mr. Munger testified in deposition that Ms. Connors "wasn't **unenthusiastic** about the job, or anything." [emphasis added] Add. 95 / R. Doc. 28-2 at 25.

Additionally, the "enthusiasm" basis for non-hiring rings particularly hollow given the spreadsheet notations for other employees who were in fact hired. The spreadsheet notations include the following notes for other persons who were hired:

- Darrell O'Neal – "Said he is good either way getting a job or not." App. 273 / R. Doc. 35-2 at 5;

- Kevin Farmer – "Likely never gets out of his truck. Has 40 wells, of them was down for two days before James (mechanic) came across it and fixed it for him… Sounded full of himself. Would not recommend a position." App. 274 / R. Doc 35-2 at 6;

- Jeff Teague – "Tr[ie]s to take care of just his business." App. 275 / R. Doc. 35-2 at 7.

These comments do not exactly identify "enthusiastic" team players.

Appellate Case: 22-2080     Page: 27     Date Filed: 07/11/2022 Entry ID: 5175736

**PROPOSITION I.**     **Ms. Connors presented Evidence of Gender and Age Discrimination sufficient to trigger a "legitimacy" burden shift, and this issue was not factually challenged by Appellee Merit, or ruled on by the District Court**

## A.     Standard of Review

With regard to the appropriate standard of review, "[t]his court reviews *de novo* a grant of summary judgment, construing all facts and making all reasonable inferences favorable to the nonmovant." *General Mills Ops., LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir.2013).  A district court's grant of "[s]ummary judgment is only appropriate when 'there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Nichols v. Tri–Nat'l Logistics, Inc.* , 809 F.3d 981, 985 (8th Cir. 2016); quoting *Pinson v. 45 Dev., LLC* , 758 F.3d 948, 951–52 (8th Cir. 2014).

## B.     Merit Energy presented no evidence challenging the allegations by Ms. Connors in her complaint as to baseline burden of proof to show age and gender discrimination.

Merit's Motion was targeted at the issue of "non-discriminatory intent" (see App. 26 / R. Doc. 28 at 2,  and the District Court did not rule on issues relating to any baseline burden of proof.  The District Court Order states that, "here, even if Plaintiff can establish a *prima facie* case of discrimination, Merit has proffered legitimate non-discriminator reasons for its decision . . . " .  App. 52 / R. Doc. 39 at 4.  However, as a matter of clarity, Ms. Connors has presented evidence sufficient

to shift the burden under the burden-shifting framework of established gender and age discrimination tests.

Gender-discrimination claims under Title VII and age-discrimination claims brought pursuant to the ADEA both are analyzed using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); see *Hilde v. City of Eveleth*, 777 F.3d 998, 1003 (8th Cir. 2014); *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011); *Cherepski v. Apple, Inc*., 2014 U.S. Dist. LEXIS 97146, at *8 (E.D. Ark. July 17, 2014) (age-discrimination).

Under that framework, a plaintiff must first establish a prima facie case of discrimination. "A plaintiff establishes a prima facie case in a 'failure to hire' case" by showing: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position for which the employer was accepting applications; (3) [s]he was denied the position; and (4) the employer hired someone from outside the protected class." *Arraleh v. Cty. Of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006). "Once the plaintiff establishes [her] prima facie case, the employer may rebut the prima facie case by articulating one or more legitimate, nondiscriminatory reasons for its decision." *Id*.

Here Ms. Connors presented evidence that clearly implicates this burden shifting framework, including evidence that:

Appellate Case: 22-2080    Page: 29    Date Filed: 07/11/2022 Entry ID: 5175736

- She is in a protected class as both a woman, and a person over the age of 40 at the time the hiring decision was made (she alleged in her complaint that she was over 40 years old at the time of the hiring decision, and testified that she had lived in the Fort Smith area for fifty years). *See* Appen. 127 / R. Doc. 28-3.

- She was qualified for an open position. Both through her performance evaluations as discussed above, and through her testimony as to her experience, Ms. Connors was clearly qualified for the position that was open at Merit – in fact she had held her position for eighteen years with XTO and eight years for prior employers. App. 129/ R. Doc. 28-3 at 5.

- It is uncontested that she was denied the position. ADD 20 / App. 293 / R. Doc. 35-2 at 25

- The employer filled the position with a person not in the same protected class. Clearly, Merit filled the positions with persons not in the same protected class as Ms. Connors. Ms. Connors was the only woman under consideration for any of the positions filled. Further, although eight positions were filled by marginally older men, the remainder were filled by younger men. App. 287 / R. Doc. 35-2 at 19. Merit's interview notes contain explicit reference to age and gender in the margins, when

Appellate Case: 22-2080     Page: 30     Date Filed: 07/11/2022 Entry ID: 5175736

they point out that several of the applicants are "younger guys." *See e.g.* App. 269, 276, 288, 295/ R. Doc. 35-2 at 1, 8, 20, and 27.

**PROPOSITION II.** **The District Court misinterpreted the factual evidence, and failed to give Ms. Connors the benefit of relevant summary judgment standards.**

**A.** **Standard of Review**

With regard to the appropriate standard of review, "[t]his court reviews *de novo* a grant of summary judgment, construing all facts and making all reasonable inferences favorable to the nonmovant." *General Mills Ops., LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir.2013). A district court's grant of "[s]ummary judgment is only appropriate when 'there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Nichols v. Tri–Nat'l Logistics, Inc.* , 809 F.3d 981, 985 (8th Cir. 2016); quoting *Pinson v. 45 Dev., LLC* , 758 F.3d 948, 951–52 (8th Cir. 2014). In the context of pretext tests in discrimination cases, in order to sustain a motion for summary judgment, the evidence presented must be such that it is "insufficient to allow a reasonable juror to find" that an employer's reason for non-hiring was pretextual. *Gardner v. Wal-Mart Stores, Inc*., 2 F.4th 745 (8th Cir. 2021)

Appellate Case: 22-2080    Page: 31    Date Filed: 07/11/2022 Entry ID: 5175736

**B.** **When the evidence is taken in the light most favorable to Ms. Connors, it simply cannot be said that a reasonable jury could not have determined that the "legitimate reasons" provided by Merit for Ms. Connors' non-hiring were merely a pretext to cover discrimination**

The District Court relied on facts for which there was no evidence tying them to Merit's hiring determination, facts based solely on self-serving testimony presented by Merit that was contravened both by documentary evidence and by Ms. Connor's testimony and affidavit, and claims of non-discriminatory motive for non-hiring which were directly controverted by other evidence presented by Appellant. In doing so, the Court failed to apply appropriately either the burden of proof applicable to Merit energy, or to apply appropriate summary judgment standards.

In both AEDPA and gender discrimination cases, if the employer establishes a non-discriminatory basis for its decision, the burden shifts back to the plaintiff to establish that the reason articulated by the employer is pretext for an impermissible reason. *Hilde*, *supra*., 777 F.3d at 1004. The plaintiff may do so by identifying evidence that a discriminatory motive is more likely the true motivation for the employer's decision. *Id*. (citing *Torgerson*, 643 F.3d at 1047); *see also Arraleh*, 461 F.3d at 975-976 (Once an employer identifies its nondiscriminatory reason, "the plaintiff is left with the opportunity to demonstrate that the proffered reason is not the true reason for the employment decision."). Or the plaintiff may meet its burden by demonstrating that the employer's justification for its decision is simply not credible. *Id*. [emphasis added].

Even prior to consideration of this framework Appellant submits that Federal summary judgment standards require affirmative proof that a valid reason can be asserted. Here, the only statements of an actual basis for non-hiring are contradicted by the written record created by Merit. Merit's highly contradictory positions, based on its testimony, its position taken before the EEOC, and notes on non-discriminatory purpose has been that: 1) Ms. Connors did not observe fire safety precautions because she did not button a pullover that had no buttons; 2) that as a good communicator who had ideas about how to improve her wells, but she was not "enthusiastic" and did not provide ideas on how to improve her wells, and; 3) that supervisors were less complimentary of her performance than for other personnel when there is no evidence any supervisor was communicated with about her performance and not even a cursory review was conducted of her performance reviews for her years at XTO.

Fed. R. Civ. P. 56 (c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." It is axiomatic that conclusory testimony is not sufficient to support a claimed fact for summary judgment purposes. *Rose-Maston v. NME Hosp., Inc*., 133 F.3d 1104, 1109 (8th Cir. 1998) ("Conclusory affidavits, standing alone, cannot create a genuine issue of material fact precluding summary judgment."); *Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205 (8th Cir.

25

2021); *Fife v. Harmon*, 171 F.3d 1173, 1176 (8th Cir. 1999)("[i]n support of their motion for summary judgment in this case, plaintiffs submitted conclusory affidavits asserting they "do not customarily or regularly exercise discretionary powers or independent judgment." With the parties' credibility in doubt, the fact questions must be tried unless one side is clearly entitled to judgment as a matter of law.") Appellant submits that any "articulation" of a claimed non-discriminatory basis for a non-hiring decision must still meet basic summary judgment evidentiary sufficiency requirements, and that the credibility of the testimony of Carl Munger is "seriously in doubt" in this instance.

Further, even if the Court finds at a non-discriminatory basis was sufficiently articulated, the remaining burden is that "[f]or a plaintiff to survive summary judgment, she must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of a defendant's motive, even if that evidence does not directly contradict or disprove a defendant's articulated reasons for its actions." (citing *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 717 (8th Cir. 2000)). *See also Faulkner v. N. Little Rock Sch. Dist.*, 2020 U.S. Dist. LEXIS 146418, at *9 (E.D. Ark. Aug. 14, 2020); citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) ("A plaintiff may demonstrate that a material question of fact exists regarding pretext by showing 'that the employer's explanation is unworthy of credence because it has no basis in fact' or… that 'a prohibited reason more likely

Appellate Case: 22-2080    Page: 34    Date Filed: 07/11/2022 Entry ID: 5175736

motivated the employer.'"")); additionally, Appellant submits that per *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 657 (6th Cir.2000), the "court must examine plaintiff's evidence independent of the nondiscriminatory reason `produced' by the defense as its reason for terminating plaintiff."

In any summary judgment proceeding, the facts must be taken in the light most favorable to the non-moving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citing *Ricci v. DeStefano*, 557 U.S. 557, 558 129 S.Ct. 2658 (2009). And specifically, the Court is prohibited in evaluating summary judgment, from weighing the credibility of the evidence. *Id*.; *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150, 120 S.Ct. 2097 (2000)) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

Additionally in the context of evidence of legitimate grounds for a non-hiring decision, it is very important to note first that the appropriate time for making a determination as to the validity of those grounds is *the point in time of non-hiring*. In *Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 935 (8th Cir. 2006) the Court held that a proffered legitimate, non-discriminatory reason for termination need not be correct if employer honestly believed asserted grounds *at time of termination.* Here, the District Court clearly relied on extensive "information" for which there was no proof that it was within the knowledge of the hiring officers at the time they made

27

their decision. The District Court's determination of "legitimacy" turned on impermissible consideration of non-linked allegations of prior job conflicts (see discussion at 14-16 *supra*.), and express misinterpretation of what was communicated to Mr. Munger regarding the issue of soaping wells. *Id*.; S*ee McKennon v. Nashville Banner Pub. Co*., 513 U.S. 352, ----, 115 S.Ct. 879, 885, 130 L.Ed.2d 852 (1995) (because an employee's misconduct was not discovered until after her discharge, the "employer could not have been motivated by knowledge it did not have and it [could not] claim that the employee was fired for the nondiscriminatory reason"); *Sabree v. United Bhd. of Carpenters*, 921 F.2d 396, 403 (1st Cir.1990); *Perkins v. Brigham & Women's Hospital*,   78 F.3d 747, 751 (1st Cir. 1996) ("[E]mployer cannot avoid liability in a discrimination case by exploiting a weakness in an employee's credentials or performance that was not known to the employer at the time of the adverse employment action (and that, therefore, could not have figured in the decisional calculus).")

The Court then found that "Merit has proffered legitimate non-discrimiantory reasons for its decision not to hire plaintiff."  Add. 5 / App. 53 / R. Doc. 39 at 5. As noted, the unlinked (to the hiring decision) evidence of "clashes" between Ms. Connors and her supervisor were neither asserted by Merit or relied on in any documentation prior to summary judgment, for the very good reason that there is no evidence that they were known to Merit's decision-makers at the time of hiring.  The

Appellate Case: 22-2080     Page: 36     Date Filed: 07/11/2022 Entry ID: 5175736

remaining claimed non-discriminatory basis rely on nothing more than bare assertion of state of mind by Mr. Munger and Mr. Sanders, and a directly controverted account of what Ms. Connors was wearing for her ride-along.

Further, most of the factual claims made by Munger conflict with the sparse documentary record he and Sanders created. Contrary to their assertions, their documentary record shows that on the issue of "enthusiasm," based on their own records, Ms. Connors was a "good communicator," and in fact did offer suggestions on well site improvements, contrary to the testimony of Mr. Munger. See ADD 20, Appen. 275, 293 / R. Doc. 35-2 at 7, 25. On the issue of strong endorsements, Ms. Connors performance evaluations speak for themselves. Connors Affidavit, ADD 14-19 / App. 263; App. 172-196. With regard to the "fire safety" issue, there is no documented evidence that this issue was even raised prior to Ms. Connors' EEOC complaint. If one were to assume that Merit in fact applies a "uniform hiring process" to applicants, then based on the treatment of other potential hires, Ms. Connors would have been given an opportunity to address the issue at the time of the hiring evaluation, if in fact the issue existed.

The Court's findings regarding Ms. Connor's "refusal to follow instructions" are simply not supported by the record. As set out above, first, no such "refusal" was communicated to Merit's hiring personnel. Second, Ms. Connors admitted to challenging certain instructions with her supervisor, but did **not** admit to not

following them.  See App. 131 / R. Doc. 28-3 at 7.  Finally, her evaluations by that the same supervisor (James "Scott" Smith) consistently state that she followed instructions well.   App. 172-196 / R. Doc. 28-3 at 48-72.

When the facts presented here are taken in a light most favorable to Mrs. Connors, they show that a reasonable jury could find that any purported "legitimate" basis for Merit's decision not to hire here was simply not credible.   More specifically, the facts presented, taken in that light, show that:

1.   Merit Energy retained numerous younger male employees, (and designated youth in its hiring spreadsheet notations) including employees who demonstrated less initiative (enthusiasm) in interviewing, and employees who had serious performance issues (truck damage, not actually exiting their vehicle to check wells).   App. 269, 276, 288, 295/ R. Doc. 35-2 at 1, 8, 20, and 27.

2.   Ride-along interviewers kept notes detailing problems with other potential employees.  Ms. Connors was one of just two lease-operator candidates who was eliminated from the "Tentative Offer" list. App. 279 / R. Doc. 35-2 at 12. Connors' interview notes did not include anything new or different to indicate a reason she had been eliminated from the candidate pool.  (Compare App. 276 / R. Doc. 35-2 at 8 with Add. 20 /App. 293 / R. Doc. 35-2 at 25).  By contrast, the notes for the other candidate eliminated after the ride-along

Appellate Case: 22-2080     Page: 38     Date Filed: 07/11/2022 Entry ID: 5175736

interview stage, Rob Smith, were updated to state "cm [Clay Munger] have doubts about picking up speed… thinks he is overloaded..." (Compare App. 288 / R. Doc. 35-2 at 20 with App. 294 / R. Doc. 35-2 at 26.)

3.  There is no evidence that any mention of the purported "fire safety" reasons was raised by any hiring party prior to Ms. Connors' EEOC complaint, and Mr. Sanders, although he had the clear opportunity to do so, did NOT corroborate Mr. Munger's claim that he and Sanders discussed the fire safety issue at the time of hiring.  Additionally, Mr. Munger's safety complaint is simply not believable based on the evidence presented with regard to Ms. Connor's safety pull-over.  *See St. Mary's Honor Ctr. v. Hicks* 509 U.S. 502 (1993)("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

4.  Contrary to Merit's assertions, Ms. Connors' ride-along was not the same duration as ride-alongs conducted for younger and/or male candidates. Different treatment of similarly situated persons in hiring is a touchstone for identifying pretext in hiring justifications.  *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989).

Appellate Case: 22-2080    Page: 39    Date Filed: 07/11/2022 Entry ID: 5175736

5.  Most of the factual presentation by Merit in support of meeting its burden was conclusory or unsupported by documentation.

6.  The notes from Merit's employer spreadsheets and even Mr. Munger's testimony contradict core arguments, including arguments relating to enthusiasm, and to ideas for improving well production.  And in addition to the information presented above, the notes for Ms. Connors specifically point out that she  "has knowledge." App. 275 / R. Doc. 35-2 at 7.  In contrast, several of the notes relating to other hires indicate that they "lacks knowledge", have "slow knowledge", have "limited knowledge," and "didn't always give good answers."  See App. 292-295 / R. Doc. 35-2 at 24-27.

     This inclusion in her interview notes reflected she was more knowledgeable than several successful applicants and that her route was more extensive than most of the candidates Merit ultimately hired. In fact, among the 16 candidates identified as having significantly shorter routes than Connors' route of 54 wells, the average number of wells was 33.1, and the median was 33.  *Id*.  In *Hase v. Mo. Div. of Employment Sec*., 972 F.2d 893, 897 (8th Cir. 1992), this Court noted that in the case of promotion of a younger individual who had sixteen years less experience and lower performance rating this discrepancy could lead a reasonable trier of fact to infer that the defendant's proffered reasons were pretextual.

Appellate Case: 22-2080     Page: 40     Date Filed: 07/11/2022 Entry ID: 5175736

7.    "Enthusiasm" is exactly the sort of non-objective "guideline" discussed in *Brown v. Gaston County Dyeing Machine Company*, 457 F.2d 1377, 1382-83 (4th Cir. 1971)(finding that a lack of objective guidelines for hiring and promotion can corroborate other evidence of pretext and discriminatory purpose).

8.    Merit's hiring employees took no action to determine or evaluate Ms. Connor's work performance history.  In *Humphries v. CBOCS West Inc*., 474 F.3d 387, 408 (7th Cir. 2007) the Court noted that, "the quality of Christensen's investigation may have some bearing on the truthfulness of Cracker Barrel's proffered reasons for terminating Humphries.   In short, these are the sort of disputed factual issues that a jury should sort out."

8.    Unlike male employees, Ms. Connors was given no opportunity to address purported problem areas.

9.    There is no contemporaneously produced documentation of any of the purported non-discriminatory basis asserted by Merit, and the documentation that was produced supports only a contrary conclusion.  *See e.g. Cicero v. Borg-Warner Auto. Inc*., 280 F.3d 579, 589 (6th Cir. 2002) (positive statements on plaintiff's job performance could allow jury to find that defendants' proffered reason had no basis in fact or that it was insufficient to

Appellate Case: 22-2080     Page: 41     Date Filed: 07/11/2022 Entry ID: 5175736

motivate discharge decision), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 n. 4(2009).

10.  The reasons given for not hiring Ms. Connors by Mr. Munger and Mr. Sanders were effectively inconsistent with each other. Mr. Sanders had full opportunity to corroborate Mr. Munger's claimed "fire safety" discussion and instead chose only to explain his choice not to hire in the most general of terms. *Sanders Affidavit*, App. 257 / R. Doc. 28-4. In evaluating a claim of pretext, the fact finder may properly take into account "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

**PROPOSITION III      Appellant's ACRA claim should not be dismissed.**

**A.    Standard of Review**

Interpretation of statutes is subject to de novo review on appeal. *United States v. Jungers*, 702 F.3d 1066 (8th Cir. 2013).

**B.    The ACRA extends civil rights relief to employees of non-state employers**

The District Court did not rule on Appellee's contention that the ACRA claims here should be dismissed as a matter of law because no state actor was involved. See Appellee's *Motion for Summary Judgment*, App. 25 / R. Doc. 28 at para. 2. The court

applied the same fact analysis to the ACRA claim that it did to the other claims here, citing *Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725, 729 (8th Cir. 2019) and *Harmon v. Payne*, 592 S.W.3d 619, 623 (Ark. 2020). *See also Barber v. C1 Truck Driver Training Llc*, 656 F.3d 782, 792 (8th Cir. 2011)("claims of discrimination and retaliation are properly analyzed under the same legal framework whether brought under Title VII or ACRA..."). However, should the Court rule in favor of Appellant here, Appellee's contention that ACRA claims are limited to state actors is incorrect and should be denied. A.C.A § 16-123-107(a)(1) expressly extends to "employers" and provides redress for individuals "who [are] injured by employment discrimination by an employer. . ."

*Harmon*, *supra*., which was cited by Appellees at trial, simply does not address private employer liability under the statute, but rather addresses sovereign immunity for state actors. Exceptions are made to applicability under §16-123-103 for specific employers (primarily religious organizations), but there is no evidence that the statute is otherwise limited in scope to state actors. *Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009)("Title VII and the Arkansas Civil Rights Act make it unlawful for an employer to discriminate against an individual with respect to any terms of employment on the basis of the individual's race, color, religion, sex, or national origin.").

Appellate Case: 22-2080    Page: 43    Date Filed: 07/11/2022 Entry ID: 5175736

## IX. CONCLUSION

The District Court was erroneous both in considering post hoc information in support of its determination that Merit had a non-discriminatory intent in its non-hiring decision regarding Ms. Connors, and in making credibility determinations in favor of Merit on controverted evidence. Appellant respectfully requests that this Court reverse the District Court's summary judgment ruling, reverse the judgment, and remand this matter to the District Court for jury trial on all issues.

Appellate Case: 22-2080    Page: 44    Date Filed: 07/11/2022 Entry ID: 5175736

Respectfully submitted this 5th day of July, 2022,


*/s/ Jeremy B. Lowrey*
Jeremy B. Lowrey, Attorney at Law
Arkansas Bar No. 2002153
Post Office Box 153
Sheridan, Arkansas 72150
870-329-4957
Facsimile: (479) 222-1459
jlowrey@centerlane.org

ATTORNEY FOR APPELLANT
KIMBERLY CONNORS


## X.  CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. Appellant's Brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) excluding the parts of the document exempted by Fed. R. App. P. 32(a)(7)(B)(iii), the document contains 8292 words.

2. Appellant's Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 (Office 365) in a size 14 Times New Roman font.

*/s/ Jeremy B. Lowrey*
Jeremy B. Lowrey

## XI.  CERTIFICATE OF COMPUTER COMPLIANCE

Counsel certifies that the brief and addendum have been scanned for viruses and are virus free.

*/s/ Jeremy B. Lowrey*
Jeremy B. Lowrey

Appellate Case: 22-2080     Page: 45     Date Filed: 07/11/2022 Entry ID: 5175736

## XII. CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2022 I electronically filed the foregoing corrected version of Appellant's Brief in Chief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. (Appellant's Brief was originally electronically filed July 5, 2022). Appellant's separately filed Addendum was previously filed and accepted for filing through CM/ECF on July 5, 2021. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system, including:

**Michael B. Heister**
Quattlebaum Grooms Tull Burrow PLLC
111 Center Street
Suite 1900
Little Rock, AR 72201

*/s/ Jeremy B. Lowrey*
Jeremy B. Lowrey

x

# XIII. ADDENDUM

*[Electronic Addendum Filed Separately Per Court Rule]*

JUDGMENT in *Case No. 2:19-cv-00096-JTR*
Eastern District of Arkansas  1/24/2020  DCD 22, APP   ................ ADD 1

Memorandum Opinion 1/24/20  DCD 21, APP  .............................. ADD 2

ORDER (prejudgment issues) 9/3/19 DCD 8, APP ........................... ADD 19

Judgment in a Criminal Case – *Case 2:00-04010-01-CR-C-SOW*
Western District of Missouri 11/8/2000 Crim. DCD 47, APP........... ADD 31

ORDER [Vacating Count Three] 8/4/2005 Crim. DCD 88, APP ..... ADD 39

Excerpts – Volume II, Crim. Transcript of Trial
Jury Instructions  (Filed 1/16/2000) ................................... ADD 41

**Copies of Relevant Statutes (per Fed. R. App. P. 28(f))**

28 U.S.C. § 2241................................................................ ADD 52

28 U.S.C. § 2255 (does not include Habeas Rules and Forms
Appendix) .......................................................................... ADD 56

Appellate Case: 22-2080    Page: 47    Date Filed: 07/11/2022 Entry ID: 5175736