IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

KIMBERLY CONNORS                                                    APPELLANT

v.                              CASE NO. 22-2080

MERIT ENERGY COMPANY, LLC                                          APPELLEE

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

---

HONORABLE P.K. HOLMES, UNITED STATES DISTRICT JUDGE
CASE NO. 2:20-cv-02217-PKH

---

**BRIEF OF APPELLEE MERIT ENERGY COMPANY, LLC**

---

Michael B. Heister (2002091)
Laura L. O'Hara (2021150)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
mheister@qgtlaw.com
lohara@qgtlaw.com

*Attorneys for Appellee Merit Energy Company, LLC*

i

# SUMMARY OF THE CASE

The District Court correctly determined that Ms. Connors' subjective claim of discrimination without corroborating evidence could not survive summary judgment given Merit Energy Company, LLC's ("Merit") legitimate, non-discriminatory explanation for its decision not to hire her. Merit provided substantial evidence supporting its proffered non-discriminatory explanation. The District Court concluded that Ms. Connors had not met that with evidence supporting any allegation of discrimination. It found that Merit's explanation for not hiring Ms. Connors was consistent, legitimate, and well within Merit's rights as a hiring employer. Accordingly, the District Court granted Merit's motion for summary judgment and dismissed with prejudice Ms. Connors' claims.

Merit does not believe that oral argument is necessary. If oral argument is provided, then ten minutes is sufficient.

Appellate Case: 22-2080     Page: 2     Date Filed: 08/10/2022 Entry ID: 5186021

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Merit Energy Company, LLC, is a privately held limited liability company. Merit Energy Company, LLC, does not have any parent corporation and no publicly held corporation owns 10% or more of its stock.

Appellate Case: 22-2080    Page: 3    Date Filed: 08/10/2022 Entry ID: 5186021

# TABLE OF CONTENTS

SUMMARY OF THE CASE ..................................................................... ii

CORPORATE DISCLOSURE STATEMENT ...................................... iii

TABLE OF CONTENTS ..................................................................... iv

TABLE OF AUTHORITIES ................................................................ vi

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES ........................................................... 2

STATEMENT OF THE CASE .............................................................. 3

SUMMARY OF THE ARGUMENT ...................................................... 8

ARGUMENT ..................................................................................... 9

   I.     MS. CONNORS DID NOT PRESENT
         EVIDENCE OF AGE DISCRIMINATION .............................. 9

   II.    THE DISTRICT COURT'S FINDINGS THAT NO REASONABLE
         JURY COULD HAVE DETERMINED THAT MERIT'S LEGITIMATE
         REASONS FOR NOT HIRING MS. CONNORS WERE PRETEXT
         SHOULD BE AFFIRMED .................................................... 13

        A.    Merit Proffered Legitimate, Non-Discriminatory Reasons For Its
            Decision Not To Hire Ms. Connors ............................... 14

        B.    Ms. Connors Did Not Meet Her Burden To Provide Evidence Of
            Both False Statements And Discrimination .................. 16

            1.  Merit's reasons for not hiring Ms. Connors are
               contemporaneous and consistent ..................... 18

            2.  Ms. Connors and the EEOC place too much weight on
               the Miscellaneous Notes ................................. 22

Appellate Case: 22-2080    Page: 4    Date Filed: 08/10/2022 Entry ID: 5186021

  C.    Merit Relies On Material Facts That Are Not Controverted .........24

III.   THE DISTRICT COURT'S DISMISSAL WITH PREJUDICE OF MS. CONNORS' ACRA CLAIM SHOULD BE AFFIRMED.......................27

IV.    THE EEOC'S AMICUS BRIEF IS NEITHER PERSUASIVE NOR HELPFUL...............................................................................28

CONCLUSION ...................................................................................30

CERTIFICATE OF COMPLIANCE ....................................................31

CERTIFICATE OF COMPUTER COMPLIANCE...............................32

CERTIFICATE OF SERVICE .............................................................33

Appellate Case: 22-2080    Page: 5    Date Filed: 08/10/2022 Entry ID: 5186021

# TABLE OF AUTHORITIES

**Cases**          **Page**

*Arnold v. Nursing & Rehab Ctr. At Good Shepherd, LLC,*
471 F.3d 843 (8th Cir. 2006) ............................................................15, 20, 27

*Arraleh v. Cty. of Ramsey,*
461 F.3d 967 (8th Cir. 2006) ..........................................................................10

*Barber v. American Airlines Inc.,*
791 F.2d 658 (8th Cir. 1986) ..........................................................................10

*Barber v. C1 Truck Driver Training, LLC,*
656 F.3d 792 (8th Cir. 2011) ..........................................................................28

*Bharadwaj v. Mid Dakota Clinic,*
954 F.3d 1130 (8th Cir. 2020) ..................................................................19, 20

*Carter v. Lutheran Medical Center,*
87 F.3d 1025 (8th Cir. 1996) ..........................................................................28

*Chambers v. Metro. Prop & Cas. Ins. Co.,*
351 F.3d 848 (8th Cir. 2003) ..........................................................................15

*Dartmouth Review v. Dartmouth College,*
889 F.2d 12 (1st Cir. 1989)..............................................................................26

*Evers v. Alliant Techsystems, Inc.,*
241 F.3d 948 (8th Cir. 2001) ....................................................................14, 15

*Fatemi v. White,*
775 F.2d 1022 (8th Cir. 2015) ..............................................................19, 20, 24

*General Elec. Co v. Gilbert,*
429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) .....................................28

*General Mills Ops., LLC v. Five Star Custom Foods, Ltd.,*
703 F.3d 1104 (8th Cir. 2013) ........................................................................24

vi

*Hill v. St. Louis Univ.,*
    123 F.3d 1114 (8th Cir. 1997) .......................................................14

*Hutson v. McDonnell Corp.,*
    63 F.3d 771 (8th Cir. 1995) ..........................................................15

*Johnson v. Ready Mixed Concrete Co.,*
    424 F.3d 806 (8th Cir. 2005) ........................................................16

*Kincaid v. City of Omaha,*
    378 F.3d 799 (8th Cir. 2004) ........................................................15

*Lidge-Myrtil v. Deer & Co.,*
    49 F.3d 1308 (8th Cir. 1995) ........................................................15

*Lowe v. J.B. Hunt Transp.,*
    963 F.2d 173 (8th Cir. 1992) ........................................................12

*McKay v. U.S. Dep't of Transp.,*
    340 F.3d 695 (8th Cir. 2003) ..................................................16, 20

*Muldrow v. City of St. Louis,*
    30 F.4th 680 (8th Cir. 2022) .........................................................29

*Nichols v. Tri-Nat'l Logistics, Inc.,*
    809 F.3d 981 (8th Cir. 2016) ........................................................24

*Reeves v. Sanderson Plumbing Products, Inc.,*
    530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed. 22d 105 (2000) ............17

*Shikles v. Sprint/United Mgmt. Co.,*
    426 F.3d 1304 (10th Cir. 2005) ....................................................28

*St. Mary's Honor Center v. Hicks,*
    509 U.S. 502 113 S. Ct. 2742, 125 L.Ed 2d 407 (1993) ...............16

*Stone v. McGraw Hill Fin., Inc.,*
    856 F.3d 1168 (8th Cir. 2017) ......................................................16

Appellate Case: 22-2080     Page: 7     Date Filed: 08/10/2022 Entry ID: 5186021

*Strate v. Midwest Bankcentre, Inc.,*
    398 F.3d 1011 (8th Cir. 2005) ...................................................................16, 17

**Rules and Statutes**

29 U.S.C. § 631(a) ........................................................................................10, 11

42 U.S.C. § 2000e .................................................................................................1

29 U.S.C. § 621, *et seq.*........................................................................................1

Ark. Code Ann. § 16-123-101, *et seq.*....................................................................1

Appellate Case: 22-2080    Page: 8    Date Filed: 08/10/2022 Entry ID: 5186021

# JURISDICTIONAL STATEMENT

Ms. Connors filed this lawsuit on November 30, 2020, in the United States District Court for the Western District of Arkansas. (App. 8; R. Doc. 2, at 1). Ms. Connors claimed Merit discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act of 1965, as amended ("Title VII"). 42 U.S.C. § 2000e, *et seq.* (App. 8; R. Doc. 2, at 3-5). Her second claim was that Merit discriminated against her on the basis of age, in violation of the Age Discrimination Employment Act of 1967 ("ADEA"). 29 U.S.C. § 621, *et seq.* (App. 8; R. Doc. 2, at 5-7). Ms. Connors' final claim was that Merit discriminated against her on the basis of sex, in violation of the Arkansas Civil Rights Act of 1993. Ark. Code Ann. § 16-123-101, *et seq.* ("ACRA"). (App. 8; R. Doc. 2, at 7).

On March 10, 2022, Merit field a motion for summary judgment as to each of Ms. Connors' claims. (App. 26; R. Doc. 28, at 1). The District Court granted that motion and dismissed with prejudice Ms. Connors' claims. (Add. 2; App. 49; R. Doc. 39, at 1). Ms. Connors filed her timely Notice of Appeal on May 19, 2022. (App. 58; R. Doc. 42, at 1). This is an appeal from a final decision by the District Court dismissing all claims with prejudice. Consequently, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. There are no related appeals in this proceeding.

1

## STATEMENT OF THE ISSUES

I.     Whether Ms. Connors submitted sufficient evidence to trigger the *McDonnell Douglas* burden-shifting framework for her ADEA age discrimination claim.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973)

*Arreleh v. City of Ramsey,* 461 F.3d 967, 975 (8th Cir. 2006)

II.     After Merit articulated a legitimate, non-discriminatory motive for not hiring Ms. Connors, whether she provided sufficient evidence that they were pretexts to hide discrimination.

*Evers v. Allian Techsystems, Inc.,* 241 F.3d 948 (8th Cir. 2001)

*Hill v. St. Louis Univ.,* 123 F.3d 1114 (8th Cir. 1997)

*Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771 (8th Cir. 1995)

III.     Whether, presuming reversal and remand, Ms. Connors' Arkansas Civil Rights Act Claim should be reinstated.

*Barber v. C1 Truck Driver Training LLC*, 656 F.3d 782, 792 (8th Cir. 2011)

Appellate Case: 22-2080    Page: 10    Date Filed: 08/10/2022 Entry ID: 5186021

## STATEMENT OF THE CASE

On January 1, 2020, Merit purchased the "Assets" from XTO (App. 28; R. Doc. 30, at 1). Merit planned to hire some of XTO's employees from XTO's Ozark office to help Merit operate the Assets. (App. 28; R. Doc. 30, at 1). Merit and XTO both understood that Merit would not need to hire all XTO's former employees. (App. 29; R. Doc. 30, at 2). One job position was as a "lease operator," and there were twenty-eight XTO lease operators available to hire, including Ms. Connors. (App. 29; R. Doc. 30, at 2). All of XTO's other lease operator candidates were men. (App. 29; R. Doc. 30, at 2). Merit determined that it would only need to hire twenty of the twenty-eight XTO lease operators. (App. 29; R. Doc. 30, at 2). Each of the lease operators Merit considered for employment was, by definition, qualified in the sense that XTO already had them doing the job, and had relevant prior experience and years of experience working for XTO. (App. 29; R. Doc. 30, at 2). Thus, it was inevitable that some qualified XTO lease operators would not receive job offers from Merit. (App. 29; R. Doc. 30, at 2).

Merit applied the same hiring process to the evaluation of XTO employees that it had used in numerous prior asset acquisitions (the "Hiring Process"). (App. 29; R. Doc. 30, at 2). Merit's experienced field supervisors, Clay Munger and Randy Sanders, (the "Interview Team") conducted the Hiring Process at XTO's office. (App. 29; R. Doc. 30, at 2). The Interview Team based its decisions on what they

3

observed in the limited time they had with XTO employees. (App. 29; R. Doc. 30, at 2). XTO did not give Merit access to XTO's employee records. (App. 29; R. Doc. 30, at 2).

The Hiring Process included having the Interview Team separately conduct ride-alongs to observe XTO's people twice in the field. (App. 30; R. Doc. 30, at 3). The Interview Team also observed candidates around XTO's office. (App. 30; R. Doc. 30, at 3). During these encounters, the Interview Team tried to solicit prior work experience and ideas about maintaining or increasing production of the Assets from the XTO employees. (App. 30; R. Doc. 30, at 3). Each prospective employee was offered a formal in-person interview with the Interview Team, arranged by XTO and held at XTO's office around November 21, 2019. (App. 30; R. Doc. 30, at 3). The Interview Team also made a practice of mentioning different XTO employees to the XTO supervisors to evaluate the supervisors' non-verbal response, including whether or not the XTO supervisor seemed enthusiastic to discuss or recommend the XTO employee. (App. 30; R. Doc. 30, at 3). Throughout the Hiring Process, the Interview Team occasionally recorded their observations in a working excel spreadsheet ("Miscellaneous Notes"). The Interview Team initially identified Ms. Connors as someone who likely would get a job offer. (App. 289; R. Doc. 35-2, at 21).

4

During the Hiring Process, Mr. Sanders conducted a ride-along with Ms. Connors. (App. 31; R. Doc. 30, at 4). Nothing about Mr. Sanders' ride-along with Ms. Connors was memorable. (App. 31; R. Doc. 30, at 4). Mr. Sanders did, however, observe that none of the XTO supervisors spoke positively about Ms. Connors, although they praised other lease operators. (App. 31; R. Doc. 30, at 4). As noted above, Mr. Sanders did not initially rule Ms. Connors out based on these considerations, but as the evaluation process continued, he ultimately concluded that there were twenty other lease operators who were better candidates. (App. 31; R. Doc. 30, at 4).

Mr. Munger conducted a second ride-along with Ms. Connors. (App. 31; R. Doc. 30, at 4). During that process he became aware of an issue between Ms. Connors and her XTO supervisor regarding "dropping soap," a method of increasing well production. (App. 31; R. Doc. 30, at 4). Mr. Munger learned this from Giles France, another XTO lease operator, during his ride along with Mr. France. (App. 31; R. Doc. 30, at 4). Mr. Munger learned that Mr. France and Ms. Connors had the same field supervisor, Scott Smith. (App. 31; R. Doc. 30, at 4). Mr. Smith had instructed Ms. Connors to soap her wells more frequently. (App. 31; R. Doc. 30, at 4). Ms. Connors refused to do so. (App. 31; R. Doc. 30, at 4). Mr. Smith had to have Mr. Giles soap the wells on Ms. Connors' route instead. (App. 31; R. Doc. 30, at 4).

5

Mr. Munger has concerns about Ms. Connors refusal to do as instructed by a supervisor. (App. 32; R. Doc. 30, at 5).

Ms. Connors testified that she and Mr. Smith had a long-running dispute over whether wells on her route would benefit from dropping soap. (App. 32; R. Doc. 30, at 5). She testified "I didn't care. Scott [Smith] didn't mean anything to me . . . . And I did my job, and if I didn't have to talk to him, I was better for it." (App. 137; R. Doc. 28-3, at 47-48). She further testified that "Scott [Smith] and I didn't see eye-to-eye, and we did bump heads. Yes. . . . And if Scott could've got rid of me, he would've because he didn't like me, and I didn't like him, but we could work together, and we did." (App. 131; R. Doc. 28-3, at 22).

That was consistent with Mr. Munger's observation that Ms. Connors generally had a negative attitude in her interactions with XTO employees and Merit's representatives. (App. 32; R. Doc. 30, at 5). Ms. Connors did not seem to get along well with her supervisors and spoke negatively about Mr. Smith in particular. (App. 32; R. Doc. 30, at 5). Mr. Munger also observed that Ms. Connors had worn her fire-resistant clothing improperly both in the field and coming and going from various offices. (App. 32; R. Doc. 30, at 5). He also noticed that what he had observed was the same as what he saw in a picture of Ms. Connors in an XTO employee photograph. (App. 32; R. Doc. 30, at 5). This concerned Mr. Munger because it was a safety issue and suggested that Ms. Connors might be prone to

Appellate Case: 22-2080    Page: 14    Date Filed: 08/10/2022 Entry ID: 5186021

disregarding safety protocols. (App. 33; R. Doc. 30, at 6). There is no evidence that Mr. Munger observed similar problems with any of the other XTO lease operators.

The Interview Team could not hire all XTO's lease operators. It identified several subjective, performance-related reasons for not including Ms. Connors in the twenty XTO lease operators who would get job offers. There is no evidence that either Mr. Munger or Mr. Sanders considered Ms. Connors' age or gender during the hiring process. As to age discrimination, of the twenty lease operators Merit hired, thirteen were in the protected class of those over the age of forty, and eight were over the age of fifty. (App. 35; R. Doc. 30, at 8). As to gender discrimination, Merit had no control over the candidate pool that XTO had pre-established, and Merit is not responsible for Ms. Connors being the only female lease operator at XTO's Ozark office. (App. 34; R. Doc. 30, at 7). Merit's reasons for not hiring Ms. Connors have been consistent from Mr. Munger's initial report in response to the EEOC investigation through summary judgment.

7

## SUMMARY OF THE ARGUMENT

This case presents the question of whether a prospective employee, based on her own subjective opinion that she was the best candidate, can support a claim for sex and age discrimination when not offered a job. Ms. Connors assumes there must have been sex and age discrimination because she claims she had more work experience than the other admittedly-qualified XTO lease operators Merit did hire. Merit's Interview Team had limited time and access to information about the XTO employees it could hire. Nevertheless, in what time was available, the Interview Team developed concerns that Ms. Connors was dismissive of instructions from her supervisor, casual about safety protocols, and did not have a good attitude. The fact that her XTO supervisors praised others but not Ms. Connors spoke volumes.

The District Court correctly ruled that that this evidence established a legitimate, non-discriminatory reason that Ms. Connors failed to prove was pretext. Ms. Connors argued Merit provided shifting explanations for why it did not hire her, but the District Court accurately found that Merit's core concerns about Ms. Connors' attitude towards authority were consistent and that there was no evidence that discriminatory intent was ever a factor. The District Court's dismissal with prejudice of Ms. Connors' claims should be affirmed.

8

## ARGUMENT

The District Court carefully reviewed the record and concluded that Ms. Connors had not presented evidence sufficient to survive summary judgment. Ms. Connors believed herself to be the most qualified of all the XTO lease operators and concluded that Merit owed her a job because of her years of experience. (App. 141; R. Doc. 28-3, at 63). When asked about her proof of discrimination, Ms. Connors testified Merit "kept a 32-year-old with seven years of experience over someone that was 55 with 19 years with XTO." *Id*. Ms. Connors overestimated her experience and underestimated the legitimate, subjective criteria in play such as attitude. The evidence does not bear out Ms. Connors' assumption of discrimination. Merit predominantly hired lease operators within Ms. Connors protected age class, barring *ab initio* any age discrimination claim. Merit proffered legitimate, non-discriminatory reasons for not hiring Ms. Connors that are supported by contemporaneous evidence, that have been consistent, and that are not controverted by any evidence from Ms. Connors or the EEOC. Ms. Connors has provided no evidence of discriminatory animus. The District Court's dismissal with prejudice of each of Ms. Connors' claims should therefore be affirmed.

## I. MS. CONNORS DID NOT PRESENT EVIDENCE OF AGE DISCRIMINATION

Ms. Connors first argues that Merit failed to demonstrate that Ms. Connors has not established a prima facie age discrimination claim. But Merit argued at

9

summary judgment that "Ms. Connors fails even to establish a prima facie case" for age discrimination. The District Court correctly identified the four elements of a prima face case of age discrimination in a failure to hire case: (1) being a member of a protected class; (2) being qualified for the open position; (3) being denied the position; and (4) the employer hires someone from outside the protected class. (Add. 5; App. 53; R. Doc. 39, at 4) (*Arraleh v. Cty. of Ramsey,* 461 F.3d 967, 975 (8th Cir. 2006)). Ms. Connors has not met the fourth element.

The Eighth Circuit has held that the inference of age discrimination is "plainly impermissible" where the persons receiving the employment benefit allegedly denied to the plaintiff were in the same protected class. *Barber v. American Airlines, Inc.,* 791 F.2d 658 600 (8th Cir. 1986). "No inference of age discrimination can be drawn" where employees given the employment benefit were similar in age to the plaintiff. *Id.* The undisputed evidence established that Merit was going to hire twenty lease operators, and <u>thirteen members of her own protected class were hired</u>. *See* 29 U.S.C. § 631(a) (setting the protected class as "individuals who are at least 40 years of age.") (App. 66; R. Doc. 28-1, at 6).

Because this fact bars Ms. Connors' ADEA claim as a matter of law, Ms. Connors tries to move the goalpost. She attempts to redefine the ADEA's protected class so that it only encompasses people older than Ms. Connors. (App. Br. at 22) ("Further, although eight positions were filled by marginally older men, the

remainder were filled by younger men."). Nevertheless, applicants between the ages of forty-years-old and fifty-four-years-old are still within the ADEA's protected class even if younger than Ms. Connors, who was fifty-five. *See* 29 U.S.C. § 631(a). (App. 8; R. Doc. 2, at 2). Ms. Connors cannot redefine the ADEA's protected class to create a dispute of fact where none exists.

Ms. Connors also attempts to distract by highlighting references to "younger guys" in the Miscellaneous Notes. (App. Br. at 23). However, that cannot establish a prima facie case in the face of the evidence above. Even if it could, the notations are brief descriptors tied to years of experience or paired with other descriptor information useful for identification rather than evaluation. (App. 269; R. Doc. 35-2, at 1) (Matthew Rogers was identified as "[y]ounger guy. Wants a posit on [sic] with Merit. Could see him being a hard worker" and Mark Andrews was a "younger guy, 7 years".) Ms. Connors does not mention that Mark Andrews, identified as a "younger guy," was marked as a "no" on the Miscellaneous Notes and not hired. (App. 289; R. Doc. 35-2, at 21). The designation "younger guy" was therefore not necessarily the positive that Ms. Connors assumes, and Ms. Connors provided no expert evidence to support drawing any statistical or other inferences from this evidence.

Moreover, the Miscellaneous Notes contain numerous items of identifying information clearly irrelevant to the substantive evaluation process. (App. 293; R.

11

Doc. 35-2, at 25) (noting that Keith Downs had a "SCHOOL DAUGHTER" that they should ask about); (App. 275; R. Doc. 35-2, at 7) (noting that Leonard "Jeff" Teague was a "master plumber"); (App. 274; R. Doc. 35-2, at 6) (noting that Kevin Flurry used to be a firefighter); when put into context, the notations that Ms. Connors relies on as her evidence of "explicit" age and gender discrimination become exactly what they are—shorthand identifiers to allow the Interview Team working in a foreign office to remember quickly who was who among the sixty-plus people they were evaluating (lease operators were just one of several categories) in the limited time they had. Ms. Connors repeatedly neglects to mention in her brief that XTO would not provide personnel files to Merit. (App. 62; R. Doc. 28-1, at 2).

Not only are Ms. Connors' arguments disingenuous, they are also illogical. The Eighth Circuit has stated that it would be incredible to conclude "that company officials who hired [plaintiff] at age fifty-one had suddenly developed an aversion to older people less than two years later." *Lowe v. J.B. Hunt Transp.,* 963 F.2d 173, 174-75 (8th Cir. 1992). It would be equally illogical to conclude that an employer who hired predominantly people from a protected class also has an aversion to that protected class. Merit has provided undisputed evidence that it hired predominantly people over the age of 40. Ms. Connors does not have a prima facie case of age discrimination.

12

The EEOC is silent about whether Ms. Connors has established a prima facie case of age discrimination. (Amicus Br. at 16-17) (discussing only a prima facie case of sex discrimination).

The District Court's ruling that "[t]he record is completely devoid of any evidence that Merit considered Plaintiff's age in the hiring process" and that Ms. Connors' ADEA claim be dismissed with prejudice should be affirmed. (Add. 9; App. 56; R. Doc. 39, at 8).

## II. THE DISTRICT COURT'S FINDINGS THAT NO REASONABLE JURY COULD HAVE DETERMINED THAT MERIT'S LEGITIMATE REASONS FOR NOT HIRING MS. CONNORS WERE PRETEXT SHOULD BE AFFIRMED

The District Court found that Merit's evidence established legitimate reasons for not hiring Ms. Connors. (Add. 7; App. 54; R. Doc. 39, at 6). Ms. Connors and the EEOC argue that a reasonable jury could find Merit's reasons for not hiring Ms. Connors were pretextual because they were non-contemporaneous, contradictory to documentary and testamentary evidence, and too subjective. (App. Br. at 24); (Amicus Br. at 17-18, 28). But the District Court reviewed the evidence provided and carefully considered and rejected those arguments and its ruling should be affirmed. (Add. 8; App. 55; R. Doc. 39, at 7).

### A. Merit Proffered Legitimate, Non-Discriminatory Reasons For Its Decision Not To Hire Ms. Connors

In the fall of 2019, Merit evaluated twenty-eight XTO lease operators for twenty spots with Merit. Merit has completed similar tasks countless times before. It is a task that Merit—and any employer—has the right to complete without court interference, absent actual evidence of discrimination. *See Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 957 (8th Cir. 2001) (citing *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1120 (8th Cir. 1997) (holding that "[i]t is not the role of this court to sit as a 'super-personnel department' to second guess the wisdom of a business's personnel decisions").

Merit had to make time-limited hiring decisions from a pool of qualified candidates based on its subjective impressions about which candidates would be best for Merit. Merit's personnel decision was that Ms. Connors was not one of the top twenty applicants because they knew she ignored instructions from her supervisors to soap wells such that a co-worker had to do that part of her job. *See supra* pp. 5-6. They knew she seemed to have a casual attitude towards safety. *See supra* pp. 6-7. And, she seemed to have a generally unenthusiastic attitude toward her job, which was highlighted by her supervisors' failure to make favorable references to her when they were praising others. *See supra* p. 5.

These are subjective considerations, but Merit was allowed to be subjective. *See Evers*, 241 F.3d at 958 (holding that "[t]he presence of subjectivity in

14

employment evaluations is itself not a grounds for challenging those evaluations as discriminatory") (quoting *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 780 (8th Cir. 1995). This Court has made it clear that Merit was specifically permitted to offer jobs to candidates who had less experience than Ms. Connors but who were more desirable based on subjective criteria. *See Chambers v. Metro. Prop. & Cas. Ins. Co.,* 351 F.3d 848, 858 (8th Cir. 2003) (holding that an inference of discrimination does not arise just "because the employer chose a clearly less qualified or unqualified individual on the basis of subjective considerations alone"); *Kincaid v. City of Omaha,* 378 F.3d 799 (8th Cir. 2004) (holding that pretext is not established simply because an employer chose a similarly or even lesser qualified candidate for a position); *Lidge-Myrtil v. Deer & Co.,* 49 F.3d 1308, 1311 (8th Cir. 1995) (holding that even if an employee possesses qualifications and skills necessary for success in the open position, an employer's choice to hire a different candidate is not enough to raise an inference of pretext).

Even if Merit was overly critical in its assessment of Ms. Connors or entirely mistaken in its interpretation of circumstances or events, its honest, consistent explanation for its hiring decision can be legitimate. *See Arnold v. Nursing & Rehab Ctr. At Good Shepherd, LLC,* 471 F.3d 843, 847 (8th Cir. 2006) (holding that even where an employer makes a negative employment decision based on a mistaken belief, there is no pretext without evidence of actual discriminatory animus);

15

*Johnson v. Ready Mixed Concrete Co.,* 424 F.3d 806, 812 (8th Cir. 2005) (holding that there is not necessarily pretext even where an employer does not treat an employee fairly or fails to fairly assess an employee; *Stone v. McGraw Hill Fin., Inc.,* 856 F.3d 1168, 1176 (8th Cir. 2017) (holding that there is not necessarily pretext just because an employee judges an employee harshly or overstates the employee's short comings); *McKay v. U.S. Dep't of Transp.,* 340 F.3d 695, 700 (8th Cir. 2003 (holding that in an employment discrimination case, the court's inquiry is limited to whether the employer gave an honest explanation of its behavior rather than "whether its action was wise, fair, or correct."). Merit therefore met its burden of production and showed a legitimate, nondiscriminatory reason for its employment decision. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L.Ed 2d 407 (1993).

> **B.    Ms. Connors Did Not Meet Her Burden To Provide Evidence of Both False Statements and Discrimination**

Ms. Connors thereafter had the burden of proof to "persuad[e] the trier of fact that the defendant intentionally discriminated against the plaintiff") *Hicks,* 509 U.S. at 507. Ms. Connors had to provide evidence not only that (1) Merit's stated reasons for its decision are false but also that (2) "that discrimination was the real reason." *Hicks,* 509 U.S. at 515 (holding that "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false *and* that discrimination was the real reason.") (emphasis in original); *see also Strate v.*

16

*Midwest Bankcentre, Inc.,* 398 F.3d 1011, 1017 (8th Cir. 2005) (*following Hicks'*s

holding that a showing of pretext must include a showing that the "the adverse

employment action is a pretext *for unlawful discrimination,* not that it is merely false

in some way.") (emphasis in original).  As discussed below, Ms. Connors focuses

on the first prong and ignores the second, and in so doing failed to establish either.

The EEOC cites *Reeves v. Sanderson Plumbing Products, Inc.,* quoting "a

plaintiff's prima facie case, combined with sufficient evidence to find that the

employer's asserted justification is false, may permit the trier of fact to conclude that

the employer unlawfully discriminated." 530 U.S. 133, 148 (2000). However, the

EEOC failed to provide the critical qualification that:

> This is not to say that such a showing by the plaintiff will *always* be
> adequate to sustain a jury's finding of liability. Certainly, there will be
> instances where, although the plaintiff has established a prima facie
> case and set forth sufficient evidence to reject the defendant's
> explanation, no rational factfinder could conclude that the action was
> discriminatory. For instance, an employer would be entitled to
> judgment as a matter of law if the record conclusively revealed some
> other, nondiscriminatory reason for the employer's decision, or if the
> plaintiff created only a weak issue of fact as to whether the employer's
> reason was untrue and there was abundant and uncontroverted
> independent evidence that no discrimination had occurred.

*Reeves,* 530 U.S. at 148-149 (emphasis in original). Thus, the case upon which the

EEOC rests undercuts its argument that summary judgment was not appropriate in

this case. It explicitly states that, even where falsity is shown, there must *still* be

some reason for a reasonable jury to find discriminatory animus. As discussed

17

below, Ms. Connors has not demonstrated that Merit's proffered reasons are false. However, even if she had, she has not provided this Court or any court with *any* evidence of discriminatory intent other than her opinion.[1]

### 1. Merit's reasons for not hiring Ms. Connors are contemporaneous and consistent.

Merit's reasons for not offering Ms. Connors a job have been consistent. When Mr. Munger was first asked to provide an explanation for the Interview Team's choice to not hire Ms. Connors, Mr. Munger responded that his understanding was that Mr. France had to soap Ms. Connors' wells because Ms. Connors refused to do so. (App. Add. 1; R. Doc. 37-1, at 1).[2] Merit has been consistent on this position throughout litigation. (App. 32-33; R. Doc. 30, at 5-6); (App. 89; R. Doc. 28-2, at 97). Mr. Munger also responded that he had observed Ms. Connors routinely wearing her fire-resistant clothing improperly. (App. Add. 1; R. Doc. 37-1). Merit has been consistent on its position on this throughout the litigation process. (App. 32-33; R. Doc. 30, at 5-6); (App. 89, R. Doc. 28-2, at 82-83). Mr. Munger also responded that he had concerns that Ms. Connors had a poor attitude because she was knowledgeable but failed to apply that knowledge effectively and

---

[1] The EEOC repeats Ms. Connors' allegation in her deposition that two former Merit employees told her that "Merit does not hire women." (Amicus Br., at 5). This allegation is inadmissible hearsay, it was not relied on in the briefing below, and it should not be considered by this Court. The EEOC should know better.
[2] Appellee's Addendum is cited as "App. Add."

do the work required. (App. Add. 1; R. Doc. 37-1, at 1). Merit has been consistent on this position throughout litigation as well. (App. 31-33; R. Doc. 30, at 4-6); (App. 88; R. Doc. 28-2, at 78-79) (App. 89; R. Doc. 28-2, at 83-84); (App. 258-259; R. Doc. 28-4, at 2-3).

Ms. Connors and the EEOC also claim that there is an inference of pretext because Merit's testimony has been inconsistent due to "shifting explanations." (Amicus Br., at 23). While shifting explanations can give rise to an inference of pretext, shifting explanations do not establish pretext where the central concern remains the same. *Bharadwaj v. Mid Dakota Clinic,* 954 F.3d 1130, 1135 (8th Cir. 2020). This Court has also held that "shifting" explanations are not evidence of pretext where the employer's additional explanations merely "expound on the first" or provide additional examples. *See Fatemi v. White,* 775 F.2d 1022, 1048 (8th Cir. 2015).

In this case, Merit's central concerns regarding Ms. Connors have always been her disregard for her supervisors' instructions with respect to well production and her apparently casual approach to basic safety protocols. (App. Add. 1; R. Doc. 37-1, at 1); (App. 32-33; R. Doc. 30, at 5-6). This left the Interview Team with the general impression that Ms. Connors could not be relied upon to follow instructions, that she was not invested in her job, and that she might not be one of the best twenty applicants based on these subjective concerns. Merit's reference during litigation to

19

the fact that Ms. Connors also missed her one-on-one interview and that she seemed negative or less enthusiastic on the job are merely examples of ways in which Ms. Connors was unreliable and uninvested. *See Fatemi,* 775 F.2d at 1048. At no point has Merit's central concern changed. *See Bharadwaj,* 954 F.3d at 1135.

Moreover, Ms. Connors and the EEOC are incorrect that the Miscellaneous Notes do not reference contemporaneous knowledge that Mr. France was soaping some of Ms. Connors' wells. While Ms. Connors' section of the Miscellaneous Notes did not, Mr. France's did.  (App. 273; R. Doc. 35-2, at 5) (noting that Mr. France "[h]as worked soaping and blowing wells on Kimberly routes. Knows the wells and what would take to do better, soap, blowing, old route had 15 pumping units. Scott Smith would say. Never misses work, will do the work needed to keep the wells."). To the extent the Miscellaneous Notes establish anything, they show that the Interview Team had contemporaneous knowledge that: (1) Mr. France was doing Ms. Connors' job for her by soaping her wells; (2) that with respect to the wells that Ms. Connors claims she had so much experience operating and maintaining, she needed to "do better" regarding soap and blowing; and (3) that Scott Smith's name had come up regarding Mr. France doing work to keep up Ms. Connors' wells.  Whether Mr. Munger's negative extrapolations were correct or fair is not a basis for avoiding summary judgment. *See Arnold,* 471 F.3d at 847. All that is at issue is whether Mr. Munger has been honest and consistent when explaining

20

why he chose not to recommend Ms. Connors for a position with Merit. *See McKay,* 340 F.3d at 700 (holding that in an employment discrimination case, the court's inquiry is limited to whether the employer gave an honest explanation of its behavior rather than "whether its action was wise, fair, or correct.").

Ms. Connors and the EEOC also suggest that Mr. Sanders failed to corroborate Mr. Munger's testimony, rendering Mr. Munger's testimony inconsistent. (App. Br. at 34; Amicus Br., at 22). Mr. Munger is predominantly a field supervisor who assists with hiring decisions on an as-needed basis and who has remained at Merit's Ozark branch. (App. 68; R. Doc. 28-2, at 32-34). By contrast, Mr. Sanders is continuously assisting with acquisitions around the country and evaluating far more candidates than Mr. Munger. (App. 256; R. Doc. 28-4, at 1). For that reason, Mr. Sanders' recall about Ms. Connors was limited. (App. 257; R. Doc. 28-4, at 2). However, Mr. Sanders provided no testimony that contradicted Mr. Munger or Merit. The fact that Mr. Sanders testified to only the limited details he personally could recall is evidence that his testimony is honest and unembellished. Ms. Connors cannot use the fact that she left no impression on a seasoned supervisor like Mr. Sanders as a fact that somehow weighs in her favor especially when she made the strategic decision not to depose him.

The District Court reviewed all this evidence and correctly ruled that Merit's explanation for its decision was supported by contemporaneous evidence and has

been consistent. Ms. Connors and the EEOC ignore a deeper flaw in their case, which was the complete absence of any evidence that any of the above, even if pretextual, was motivated by discriminatory intent. This Court made clear in *Strate* that even if a plaintiff does cast doubt on an employer's stated reason for not hiring someone, that does not satisfy the plaintiff's obligation to have proof of discriminatory intent. *See* 398 F.3d at 1017. Consequently, even if Ms. Connors had provided some evidence that Merit's positions were not completely consistent (and she has not), she still has no evidence of discriminatory intent and summary judgment is appropriate.

## 2. Ms. Connors and the EEOC place too much weight on the Miscellaneous Notes.

Ms. Connors and the EEOC rely heavily on the Miscellaneous Notes to support their argument that Merit's proffered reasons for not hiring Ms. Connors are false. They presume, without evidence, that the Miscellaneous Notes were a comprehensive written record of every contemporaneous consideration upon which the Interview Team relied. (App. Br. at 5, 22, 30-32); (Amicus Br. at 6). Ms. Connors had the opportunity during Mr. Munger's deposition to ask if the Miscellaneous Notes were a comprehensive written record of the Interview Team's processes or even a partial one or even indicative at all of what they thought, but she deliberately did not. Ms. Connors did not depose Mr. Sanders at all. Ms. Connors cannot argue

there is evidence that the Miscellaneous Notes were, in fact, a comprehensive written record, when she intentionally avoided obtaining any evidence about them.

Merit had no obligation to keep a comprehensive written record of its Hiring Process considerations or any written record at all. There is no evidence the Miscellaneous Notes were intended to serve that purpose. The Miscellaneous Notes were a short-hand referential tool as demonstrated by the half sentences, misspelled words, incomplete thoughts, and random notations. (App. 269; R. Doc. 35-2, at 1). Some entries are highly detailed while others are just a handful of disconnected phrases. (App. 269; R. Doc. 35-2, at 1). Nothing about the Miscellaneous Notes supports Ms. Connors or the EEOC's unsubstantiated assumption that they are a collection of all contemporaneous considerations.

Ms. Connors and the EEOC also overlook that the Miscellaneous Notes show that Merit initially intended to offer Ms. Connors one of the twenty positions. (App. Add. 2; R. Doc. 35-2, at 5); (App. 289; R. Doc. 35-2, at 21). Something obviously changed as the Hiring Process evolved, but Ms. Connors' gender could not have been what changed. If the Miscellaneous Notes are evidence of anything, it is that Ms. Connors' gender played no role in the Hiring Process because it did not prevent them from initially viewing her as someone likely to get an offer. It was the Interview Team's subjective observations developed after spending more time around the XTO operation that changed their minds.

23

### C.  Merit Relies On Material Facts That Are Not Controverted

Ms. Connors and the EEOC argue that Merit's reasons for not hiring Ms. Connors are controverted by evidence rendering summary judgment inappropriate. (App. Br., at 24); (Amicus Br., at 24). They confuse what is material with what is not.  It is, of course, accurate that summary judgment is only appropriate where "there is no genuine dispute as to any material fact." *Nichols v. Tri-Nat'l Logistics, Inc.,* 809 F.3d 981, 985 (8th Cir. 2016). It is also true that the Court should "constru[e] all facts and mak[e] all reasonable inferences favorable to the nonmovant." *General Mills Ops., LLC v. Five Star Custom Foods, Ltd.* ,703 F.3d 1104, 1107 (8th Cir. 2013). However, the District Court correctly concluded that, in this case, there was no genuine dispute as to any <u>material</u> fact and no reasonable jury could conclude otherwise. (Add. 2; App. 49; R. Doc. 39, at 1).

As previously discussed, Merit's central concern regarding Ms. Connors was that she could not be relied upon to follow instructions regarding well production, that she might not take safety seriously, and that she was not invested in her job. (App. Add. 1; R. Doc. 37-1); (App. 32-33; R. Doc. 30, at 5-6). These concerns arose from the observations that Ms. Connors' supervisor had to have someone else do her job, seeing her not wearing fire-resistant clothing properly, and the absence of praise from supervisors. *Id*. Other examples highlighted during litigation are merely supporting evidence. *See Fatemi,* 775 F.2d at 1048. They are not material facts, and

24

Appellate Case: 22-2080     Page: 32     Date Filed: 08/10/2022 Entry ID: 5186021

### C.  Merit Relies On Material Facts That Are Not Controverted

Ms. Connors and the EEOC argue that Merit's reasons for not hiring Ms. Connors are controverted by evidence rendering summary judgment inappropriate. (App. Br., at 24); (Amicus Br., at 24). They confuse what is material with what is not.  It is, of course, accurate that summary judgment is only appropriate where "there is no genuine dispute as to any material fact." *Nichols v. Tri-Nat'l Logistics, Inc.,* 809 F.3d 981, 985 (8th Cir. 2016). It is also true that the Court should "constru[e] all facts and mak[e] all reasonable inferences favorable to the nonmovant." *General Mills Ops., LLC v. Five Star Custom Foods, Ltd.* ,703 F.3d 1104, 1107 (8th Cir. 2013). However, the District Court correctly concluded that, in this case, there was no genuine dispute as to any <u>material</u> fact and no reasonable jury could conclude otherwise. (Add. 2; App. 49; R. Doc. 39, at 1).

As previously discussed, Merit's central concern regarding Ms. Connors was that she could not be relied upon to follow instructions regarding well production, that she might not take safety seriously, and that she was not invested in her job. (App. Add. 1; R. Doc. 37-1); (App. 32-33; R. Doc. 30, at 5-6). These concerns arose from the observations that Ms. Connors' supervisor had to have someone else do her job, seeing her not wearing fire-resistant clothing properly, and the absence of praise from supervisors. *Id*. Other examples highlighted during litigation are merely supporting evidence. *See Fatemi,* 775 F.2d at 1048. They are not material facts, and

24

Appellate Case: 22-2080     Page: 32     Date Filed: 08/10/2022 Entry ID: 5186021

any argument regarding them is irrelevant to the Court's analysis. *See Nichols,* 809 F.3d at 985.

For example, Merit did not rely on Ms. Connors missing her formal interview on November 21, 2019, with the Interview Team as a central concern. (App. 28-35; R. Doc. 30, at 1-8). Nor did Merit rely on whether Ms. Connors did or did not offer suggestions for improving well production as a central concern. *Id.* Disputes regarding the facts underlying these examples are irrelevant.

The length of Ms. Connors' ride-along is also not material because it is not evidence of disparate treatment. Although Ms. Connors argues that she was treated differently than her male colleagues because she allegedly had a shorter ride-along, Ms. Connors has presented no evidence to support that. Her testimony was that Mr. France told her that his ride-along with Mr. Munger was two hours. (Add. 19; App. 268; R. Doc. 35-1, at 6). That is inadmissible hearsay. From that statement alone, Ms. Connors extrapolated, without evidence, that all the other ride-alongs were two hours long. (App. 140; R. Doc. 28-3, at 61). There is no admissible evidence that Mr. France had a two-hour ride-along or any evidence that every other candidate had ride-alongs of similar length with Mr. Munger. There is also no evidence of how long Mr. France's ride-along with Mr. Sanders was or even if he had one. Ms. Connors also ignores the obvious fact that the duration of ride-alongs will vary depending on where in Arkansas the lease operator needs to go and where along the

way it made sense logistically for Mr. Sanders or Mr. Munger to get dropped off. The length of Ms. Connors' ride-along is simply not evidence of the kind of disparate treatment Ms. Connors identifies as a "touchstone for identifying pretext in hiring justifications." *See Dartmouth Review v. Dartmouth College,* 889 F.2d 12, 19 (1st Cir. 1989). It is therefore immaterial to summary judgment.

The EEOC argues that whether Ms. Connors was dropping enough soap on her wells was a controverted fact. (Amicus Br. at 26). It relies on a statement about Ms. Connors in the Miscellaneous Notes: "currently dropping quite a few soap sticks." (App. 275; R. Doc. 35-2, at 7). The EEOC misunderstands the nature of Merit's concerns. Merit was not in a position to determine whether Ms. Connors or Mr. Smith were more correct about the appropriate amount of soap to drop on a well. Merit's concern was that Ms. Connors so consistently refused to follow instructions that her supervisor eventually gave up correcting her and had to redirect her work to another employee. (App. 32-33; R. Doc. 30, at 5-6); (App. Add. 1; R. Doc. 37-1); (App. 273; R. Doc. 35-2, at 5). Those material facts are uncontroverted. *Id*.

Finally, both Ms. Connors and the EEOC argue that whether Ms. Connors was properly wearing her fire-resistant clothing is a controverted fact. (App. Br. at 31); (Amicus Br. at 24-26). The District Court was aware that this was disputed and stated as much.  (Add. 4; App. 51; R. Doc. 39, at 3). The District Court only discussed this in the context of observing that Merit's explanation had been consistent, and that

Ms. Connors had not demonstrated that Merit had been inconsistent, as was her burden. And in any event, even if Mr. Munger was somehow mistaken and Ms. Connors was, as she testified, wearing the same pullover day after day, there is no way for a jury to view the evidence on this issue and find it was more reasonable than not that the above was pretext for gender discrimination in particular. *See Arnold,* 471 F.3d at 847 (holding that there is no pretext without evidence of actual discriminatory animus). It is not enough for Ms. Connors to show that the employer's explanation is false in some way if there is no evidence that the explanation is false in order to cover discriminatory intent. *See Strate,* 398 F.3d at 1017 (holding that it is not enough for a plaintiff to show that an employer's explanation "is merely false in some way" unless there is evidence of unlawful discrimination.).

No material facts are in dispute in this case. Ms. Connors has provided no evidence of discriminatory intent. No reasonable jury could conclude from any evidence provided that direct or circumstantial sex or age discrimination played any part in Merit's decision not to hire Ms. Connors. The District Court's ruling granting Merit summary judgment should be affirmed.

## III. THE DISTRICT COURT'S DISMISSAL WITH PREJUDICE OF MS. CONNORS' ACRA CLAIM SHOULD BE AFFIRMED

Ms. Connors argues if her Title VII claim is remanded, her ACRA claim should be reinstated as well because ACRA "expressly extends to 'employers' and provides

27

redress for individuals 'who [are] injured by employment discrimination by an employer. . ." (App. Br., at 35). The District Court stated that analysis of Ms. Connors' ACRA claim should be identical to the analysis of Ms. Connors' Title VII claim. (Add. 9; App. 56; R. Doc. 39, at 8). The District Court also found that Ms. Connors' Title VII claim was without merit and no reasonable jury could find otherwise. (Add. 8; App. 55; R. Doc. 39, at 7). Ms. Connors' ACRA claim is only as viable as her failed Title VII claim. *Barber v. C1 Truck Driver Training LLC*, 656 F.3d 782, 792 (8th Cir. 2011). The District Court's dismissal with prejudice of Ms. Connors' ACRA claim should be affirmed.

## IV. THE EEOC's AMICUS BRIEF IS NEITHER PERSUASIVE NOR HELPFUL

On July 19, 2022, the EEOC filed an amicus brief in support of Ms. Connors seeking reversal of the District Court's findings. However, this Court need not consider the EEOC's arguments. *See Carter v. Lutheran Medical Center,* 87 F.3d 1025 (8th Cir. 1996) (declining "to consider issues raised in the amicus brief filed by the Equal Employment Opportunity Commission, an interested nonparty which was not involved in the proceedings below."). Moreover, if the Court does choose to consider the EEOC's raised arguments, it need not consider the EEOC's conclusions persuasive. *See Shikles v. Sprint/United Mgmt. Co.,* 426 F.3d 1304, 1315 (10th Cir. 2005) (citing *General Elec. Co. v. Gilbert,* 429 U.S. 125, 142, 97 S.Ct.

28

401, 50 L.Ed.2d 343 (1976) (stating that an agency's litigation assertions in amicus briefs are not afforded the same deference as statutory interpretations).

Notably, when Ms. Connors first filed her charge against Merit with the EEOC, the EEOC investigated and stated that it was "unable to conclude that the information obtained establishes violations of the statutes." (Add. 10). Now, after Ms. Connors brought this lawsuit and the parties have engaged in months of discovery—none of which the EEOC has been party to—the EEOC has inserted itself into the litigation to argue that there is, in fact, enough evidence of discrimination to survive summary judgment. (Amicus Br., at 30).

The EEOC's amicus brief offers nothing new or helpful to the Court's analysis of this case. It simply mimics Ms. Connors' unpersuasive and unsubstantiated arguments, provides incomplete and misleading references to Eighth Circuit standards for determining whether summary judgment is appropriate in *McDonnell Douglas* burden-shifting cases, and inappropriately relies on inadmissible hearsay evidence. This Court should disregard the EEOC's amicus brief as "unhelpful." *See Muldrow v. City of St. Louis,* 30 F.4th 680, 692 n.6 (8th Cir. 2022) (stating "although we have permitted the [agency] to submit a brief, we expressly state that we do not find it helpful.").

29

## CONCLUSION

Ms. Connors has never been able to provide any direct or circumstantial evidence that Merit was motivated by discriminatory animus because Merit was not. Merit made a legitimate, subjective, non-discriminatory personnel decision that it would not offer a job to Ms. Connors. It has provided contemporaneous evidence, been consistent in its explanation, and shown that there are no material facts in dispute in this case. The District Court correctly found that none of Ms. Connors' claims could survive summary judgment and its dismissal with prejudice of all Ms. Connors' claims should be affirmed.

Respectfully submitted,

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
mheister@qgtlaw.com
lohara@qgtlaw.com

By: /s/ Michael B. Heister
    Michael B. Heister (2002091)
    Laura L. O'Hara (2021150)

*Attorneys for Appellee Merit Energy Company, LLC*

Appellate Case: 22-2080    Page: 38    Date Filed: 08/10/2022 Entry ID: 5186021

## <u>CERTIFICATE OF COMPLIANCE</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☑    This brief contains __7209__ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐    This brief uses a monospaced typeface and contains_lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☑    This brief has been prepared in a proportionally spaced typeface with Microsoft Word 365 using <u>Times New Roman in 14 Point Font</u>, or

☐    This brief has been prepared in a monospaced typeface using _____.

<u>/s/ Michael B. Heister</u>
Michael B. Heister

<u>Attorney for Merit Energy Company, LLC</u>

<u>Dated: August 10, 2022</u>

31

## CERTIFICATE OF COMPUTER COMPLIANCE

Counsel certifies that the brief and addendum have been scanned for viruses and are virus free.

/s/ Michael B. Heister
Michael B. Heister

32

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2022, I electronically filed the foregoing corrected version of Appellee's Brief in Chief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. Appellee's separately filed Addendum was accepted for filing on August 9, 2022.

/s/ Michael B. Heister
Michael B. Heister

33