CASE NO. 22-2080

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

KIMBERLY CONNORS

*Appellant*

vs.

MERIT ENERGY COMPANY, LLC

*Appellee*

_____

Appeal from the United States District Court for the Western District of
Arkansas, Fort Smith,  U.S.D.C. No. 2:20-cv-02217-PKH
(*Kimberly Connors, Plaintiff v. Merit Energy Company, LLC, Defendant*)
The Honorable P. K. Holmes, U.S. District Judge
_____

**APPELLANT'S REPLY BRIEF**
_____

**Jeremy B. Lowrey**
Attorney at Law
Post Office Box 153
Sheridan, Arkansas 72150

Phone:                    870-329-4957
Facsimile Number: 479-222-1459
Email:                    jlowrey@centerlane.org


ATTORNEY FOR APPELLANT KIMBERLY CONNORS

I.   TABLE OF CONTENTS

I.   TABLE OF CONTENTS ............................................................... ii

II.  TABLE OF AUTHORITIES ...................................................... iii

III. ARGUMENT.............................................................................. 1

**Introduction –**   Discussion of Merit Energy's
                Statement of Facts.................................................. 1

PROPOSITION ONE ......................................................... 8

Merit's interpretation of Barber v. American Airlines is clearly incorrect.  Ms. Connors met the fourth prong of a prima facie case of discrimination under clearly controlling case law.

PROPOSITION TWO ......................................................... 12

Merit's "reasonable jury" argument is dependent on a highly defense-slanted reading of the facts, in contravention of summary judgment standards, and on continued conflation of post-hoc facts with facts actually considered and noted at the time of the hiring determination.

IV.     CONCLUSION ....................................................... 18

V.      CERTIFICATE OF COMPLIANCE....................................... iv

VI.     CERTIFICATE OF COMPUTER COMPLIANCE .............. iv

VII.    CERTIFICATE OF SERVICE ............................................... v

Appellate Case: 22-2080     Page: 2     Date Filed: 09/12/2022 Entry ID: 5197220

II.    TABLE OF AUTHORITIES

CASES

*Adickes v. S.H. Kress & Co*., 398 U.S. 144 (1970)................................. 14

*Bassett v. City of Minneapolis*, 211 F.3d 1097 (8th Cir. 2000) ............. 16

*Barber v. American Airlines*, 791 F.2d 658 (1986) ............................... 8, 11

*Hillebrand v. M-Tron Industries, Inc.*, 827 F.2d 363
(8th Cir. 1987)......................................................................................... 11, 12

*Kim v. Nash Finch Co*., 123 F.3d 1046 (8th Cir. 1997).......................... 16

*Thornbrough v. Columbus & Greenville R.R*., 760 F.2d 633
(5th Cir.1985).......................................................................................... 10

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)............. 16

STATUTES AND RULES

29 U.S.C. § 621 *et. seq.* ........................................................................ 1

Fed. R. Civ. P. 56(e)............................................................................... 14

Appellate Case: 22-2080    Page: 3    Date Filed: 09/12/2022 Entry ID: 5197220

## III.    ARGUMENT

*[Citation Correction – It has come to Appellant's attention that on page 24 of Appellant's brief, the ADEA was erroneously referred to as the AEDPA.  That reference should be to the ADEA (29 U.S.C. § 621, et. seq).  It also appears that the ADEA was mis-referenced as the AEDA on more than one occasion.  All such references are to the ADEA as cited above.]*

**Factual Discussion:**     **Merit Energy's Statement of Facts is not a reliable guide for evaluation under summary judgment standards.**

Merit's statement of facts in this matter makes no effort to provide any relevant timeline for the facts asserted, and evaluation is made more difficult by the fact that Merit has chosen to cite only to its allegations of fact in the record, rather than to the supporting direct factual sources (depositions, summary judgment exhibits) in the appendix. Further, Merit continues to make no effort to separate factual claims where evidence exists that those facts were within the knowledge of, or relied on by hiring personnel, from factual claims that were developed or asserted by Merit after the fact of its non-hiring decision, and further makes no attempt to evaluate those facts in terms of relevant summary judgment standards.

Specific issues with Merit's Statement of Facts include:

1.    **There were only twenty-two lease operators available for a claimed twenty jobs – not twenty-eight.**    Appellant's Brief at 4.   And several of the

1

remaining available operators were called out in notes for specific negative performance factors in their hiring processes. Appellant's Brief at 4-5. Ms. Connors was not. (App. 269 R. Doc. 35-2). Further, the "twenty jobs" limitation is not a particularly valid assertion. Mr. Munger testified in his deposition that the number of available jobs "wasn't ironclad" and was established by himself and Mr. Sanders. (App. 75 R. Doc. 28-2, at 8).

2.     **There is no evidence that Merit "applied the same hiring process it had used in numerous prior acquisitions" unless that "hiring process" involved hiring personnel making decisions with what Mr. Munger stated was "very little training."** (App. 75 R. Doc. 28-2, at 8). The only support for a normative hiring process is the affidavit of Merit's Vice President of Human Resources – Melanie Lane. (App. 61 R. Doc 28-1, at 1). There is no evidence she had any direct connection with the hiring process at the time is was conducted, and her affidavit provides no evidence of any first-hand knowledge of the hiring process actually implemented. Rather, her affidavit makes it clear that any knowledge of the process by her was depending on reporting from Mr. Munger. (App. 63 R. Doc. 28-1, at 3). Notably, there are no time referents in Lane's affidavit for any of the communications between her and Mr. Munger, and the only documentary evidence of such communications is post-EEOC filing. (App. 61 R. Doc. 28-1).

2

The reality is that any claim of a neutral process conducted by Merit is dependent solely on Munger's shifting accounts. And as evidence presented by Ms. Connors, taken in a light most favorable to her, shows, the process was not neutral as to her. Appellant's Brief at 11-14. And there is no evidence that Giles France imparted any of the information to hiring personnel regarding well soaping conflicts with supervisors at the time of the hiring decisions here. (See Appellee's Brief at ; (App. 260-61 R. Doc 28-5, at 1-2). Appellant submits that a "uniform hiring process" without training, and in which Mr. Munger could not even testify that he reviewed Ms. Connors job application provides no shield whatsoever to the claims in this litigation. See Munger Depo. (App. 74 R. Doc. 28-2, at 7).

3.      Merit continues to lean into the argument that Ms. Connors had conflicts with a prior supervisor without any connecting link to any part of the hiring process. As set out fully in her brief in chief, and as conceded by Appellee who states "XTO did not give Merit access to XTO's employee records," (Appellee's Brief at 4), **there is no evidence that any conflict between Ms. Connors and her supervisor was considered by Merit as part of its hiring decision or that Merit's hiring personnel had knowledge of any such conflict.** Appellant's Brief at 14. Under the evidence presented here, the facts Appellee claims (and the trial court erroneously relied on) were "consistent with "Munger's observation" were simply not part of the hiring consideration. *See* Appellant's Brief at 14-17

Appellate Case: 22-2080      Page: 6      Date Filed: 09/12/2022 Entry ID: 5197220

Mr. Munger himself recalled no conversations regarding **why** Giles France was soaping some of Ms. Connors' wells other than that France had been told to do so. (App. 89 R. Doc. 28-2, at 22). Nor, contrary to the carefully constructed intimations on page 5 of Appellee's Brief (which mirror the carefully constructed affidavit of Giles France) is there any evidence that Mr. France actually communicated the information contained in his affidavit to Mr. Munger during the hiring process other than the fact that he was soaping the wells according to supervisor instructions. *See France Affidavit*, (App. 260 R. Doc. 28-5, at 1). All Mr. France actually testified regarding communication with Munger was that, "During the Merit interview process, I told Clay Munger, Merit's Operations Manager, that part of my job duties involved dropping soap on some of Ms. Connors' wells." (App. 261 R. Doc. 28-5, at 2).

4.     As set out in Appellant's Brief at 17, **the issue of whether Ms. Connor's fire clothing was improperly worn, and whether Mr. Munger's claims relating to the nature of the impropriety are believable, is clearly controverted**. From Mr. Munger's testimony, this was his primary concern in non-hiring. (App. 89 R. Doc. 28-2, at 24). Mr. Munger's description of the clothing in question is directly controverted by Ms. Connor's testimony as to the nature of her fire pull-over. See Appellant's Brief at 17, (App. 139 R. Doc. 28-3, at 15). According to Ms. Connor's testimony, Mr. Mungers' claims regarding the fire clothing are simply untrue, and

he could not have observed what he claims. *Id.* Further, Randy Sanders provided no support for Mr. Munger's claim that this was a primary issue, did not provide any affidavit testimony that any conversation regarding fire safety with Munger occurred as Munger claimed, and did not submit fire safety as a basis for his decision not to hire Ms. Connors. (App. 257 R. Doc. 28-4, at 1). This is the definition of a controverted fact, clearly dependent on credibility determinations.

5. **There is direct evidence that both age and gender were considered in the hiring process.** In notations for several the subsequently hired operators the hiring personnel here specifically noted in their Comments that many of the applicants who were subsequently hired were "Younger Guy[s]". These include (with emphasis added to "younger guy" notations):

Zachary "Zach" Reeves: "**YOUNGER GUY,** LIKES FISHING, LIMITED KNOWLEDGE"

Matthew Rogers: "**Younger guy.** Wants a posit on with Merit. Could see him being a hard worker. Seemed knowledgeable with how XT had their hands t ed [sic]."

Mark Andrews: "**younger guy**, 7 years XTO, 32 wells, 3 compressors, was concerned about drive time. Worked vacation relief and has worked most of OK, Questions from Mark, why do employees in Clays area like Merit. Works Greenwood

Hacket and 5 wells in Wictherville, has worked Levi and Roberts, Keven Flurry Robert Smiths area. Has worked Oklahoma wells may not all wells there though. Seems to need constant communication and reassurance he is doing a good job. **Young** but a bit needy. Talk, Talk, Talk and many"

Matthew Rogers: "**younger guy.** Wants a position with Merit. . . "

(App. 269, 276, 288, 295 R. Doc. 35-2, at 1, 8, 20, and 27). Further, it is clear from the "young **but** a bit needy" comment to Mark Andrews' application that youth was considered a positive factor in hiring decisions. In Mr. Andrews' case, it simply was counterbalanced by a negative issue.

The "several subjective, performance-related reasons" asserted by Merit for not hiring Ms. Connors have changed repeatedly over the course of this litigation. Merit's contentions that its "reasons for not hiring Ms. Connors have been consistent from Mr. Munger's initial report in response to the EEOC investigation through summary judgment" (which notably does not discuss the lack of reasons prior to EEOC filing) is simply not correct under any reading of the record. First, as set out in Appellant's brief in chief, there were no reasons given or recorded at the time of non-hiring for the rejection of Ms. Connor's application. Appellant's Brief at 10; (App. 280 R. Doc. 35-2 at 12); (App. 269 R. Doc. 35-2, at 1). The first stated reasons

Appellate Case: 22-2080     Page: 9     Date Filed: 09/12/2022 Entry ID: 5197220

for her non-hiring in any documentation for which a date is provided are those in Merit's EEOC response, which argued that Ms. Connors was not hired for two reasons:

    a.    Less "enthusiasm" than other candidates

    b.    Failure to wear fire clothing properly

(App. 65-66 R. Doc. 28-1, at 5-6). The EEOC filing contained no reference to any supervisor conflict, employment history, "well-soaping" issues, or any other claimed basis for non-hiring asserted in this proceeding. Further, the email chain produced by Merit regarding that filing shows that Mr. Munger was given an opportunity to provide any factual corrections. (App. 282 R. Doc 35-2, at 14). Further, Randy Sanders was also given an opportunity to review the EEOC filing. *Id*. Again, his grounds for non-hiring – although ambiguously state at best – also changed between that filing and his affidavit in this proceeding, where he asserted that the grounds for non-hiring was not simply that Ms. Connors was "less enthusiastic" but that other operators "got better reviews from supervisors, and presented no job duty concerns that Clay or I identified in the limited time available to us." (App. 258-59 R. Doc. 28-4, at 2-3). Mr. Sanders presented no factual support for his claimed "performance issues" basis for non-hiring, there is no notation for any performance issues identified in the hiring spreadsheets, and this claimed basis was not presented in the EEOC filings.

Despite these facts, in deposition, Mr. Munger articulated entirely different grounds for Ms. Connor's non-hiring (although he continued to assert the disputed "fire safety gear" claim). Per Merit's arguments, Mr. Munger newly focused "throughout this litigation" on a claim that "Mr. France had to soap Ms. Connors' wells because Ms. Connors refused to do so." Appellee's Brief at 18.

Finally, Merit claimed in its EEOC response that it was "unaware of [Ms. Connor's] age. (App. 66 R. Doc. 28-1, at 61). Even disregarding the fact that the interview process was face to face, these protestations are reliant specifically on the list information provided by XTO to Merit, but make no reference to the fact that driver's licenses for potential employees were provided to Merit hiring officers. Conners Affidavit, (App. 267 R. Doc. 35-1, at 5). This denial gives additional support to the position that any claims by Merit here of a gender and age neutral ground for non-hiring are pretextual. First, Merit's hiring personnel met personally with Ms. Connors, and noted age with regard to other employees. Second, they had her driver's license in their possession at the time, as well as Ms. Connors experience history.

PROPOSITION I:     Merit's interpretation of *Barber v. American Airlines* is clearly incorrect. Ms. Connors met the fourth prong of a prima facie case of discrimination under clearly controlling case law.

Appellant clearly established that she met the four elements of a prima facie case of both gender and age discrimination. First, there is no question that the first

three prongs were met, and Appellee does not challenge that they were. Appellant's Brief at 22, Appellee's Brief at 10. In challenging the fourth prong, Appellee's citation of *Barber v. American Airlines*, 791 F.2d 658 (1986) is simply inapposite. There were no "younger guys" involved in *Barber*, and Appellee mis-interprets and over-states the *Barber* holding. In *Barber*, the Court was addressing a circumstance in which **all** of the relevant employees were in the same age bracket as the plaintiffs who were "bumped" under the American Airlines policy. In fact, the Court made a point specifically to note that, "[n]ot a single one of [the employees to whom the "bump" criteria was applied] was outside the protected age group." That is simply not the case here. Appellee affirmatively demonstrated that multiple employees were hired outside the protected classes of which she was a member. Appellant's Brief at 22, (App. 287 R. Doc. 35-2, at 19). Merit does not contest this. Appellee's Brief at 10. Further, Merit's argument clearly does not apply to Ms. Connor's claim of gender discrimination, as Merit hired 20 men, rejecting only Connors and two other XTO employees. (R. Doc. 36, at 8). Further, there is no question that no women were hired for any of the positions, as Ms. Connors was the only female applicant.

Unlike *Barber*, numerous younger employees - some of whom were specifically noted as being young - were retained / hired. Further, evidence taken in a light most favorable to Ms. Connors shows that they were hired under different

9

standards (i.e. longer interview process and ride-along), that their youth was a consideration in hiring, that Merit made no effort to obtain any prior work evaluation regarding her, and that no contemporaneous basis was presented for her non-hiring.

Merit appears to be arguing that an employer can shield itself from any claim of age discrimination in hiring in what is a *de facto* reduction in force by hiring at least one person within the protected class, regardless of whether it engaged in a preference for younger applicants for all remaining available positions. This is simply not correct and *Barber* does not support this assertion. In fact, Barber explicitly notes (and distinguishes on its unique facts) the holding in *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633 (5th Cir.1985), in which the Court addressed a reduction in force determination with outcomes and circumstances similar to those here. The *Thornbrough* Court noted several apposite principles to the present case:

> To ease the evidentiary burdens on employment discrimination plaintiffs, courts have fashioned special rules of proof, in order "progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207 (1981). Initially,a plaintiff can create a rebuttable presumption of intentional discrimination by establishing a "prima facie case." Burdine, 450 U.S. at 252-53, 101 S.Ct. at 1093; McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. Generally, to establish a prima facie case, a plaintiff need only make **a very minimal showing**. **He can meet his initial burden by showing merely that he was within the protected class, that he was qualified for the job in question, and that employees outside of the protected class were more favorably treated**--for example, by being hired to a job for which the plaintiff was turned down or by replacing the plaintiff in the job from which the

plaintiff was discharged. See, e.g., McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824; Price, 561 F.2d at 612.

*Thornbrough, 760 F.3d at 639 [emphasis added].* The Appellee purports to stand this proof requirement on its ear, asking the Court here to hold that rather than showing employees outside the protected class were more favorably treated" a Plaintiff would have to show that NO employees within the protected class were employed. This is simply not the law. In fact, *Thornbrough* articulated exactly the reverse position – the one not contested in *Barber* – that,

> . . . the only evidence offered by Thornbrough in support of his claim of age discrimination was that several younger, allegedly less well-qualified employees were retained during the Railroad's reduction-in-force, and that, at the time of his discharge, two younger, allegedly less well-qualified employees were hired. Record at 4, 31-33; Thornbrough Deposition at 48-49. 14 In our view, these allegations, limited though they are, are sufficient to support a prima facie case. They exude that faint aroma of impropriety that is sufficient to justify requiring the Railroad to give reasons for its decision.
> A prima facie case "raises an inference of discrimination only because we presume [the employer's] acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco*, 438 U.S. at 577, 98 S.Ct. at 2949-50. In a reduction-in-force case, what creates the presumption of discrimination is not the discharge itself, but rather the discharge coupled with the retention of younger employees.

*Id*. at 643-44. The distinctions here are even more compelling than the facts in *Thornbrough*, because in addition to showing that "younger, allegedly less well-qualified employees were hired", unlike *Thornbrough* Appellant has shown affirmative evidence through the "younger guy" notations that age was in fact a consideration in the hiring process. The *Thornbrough*-type analysis has been

Appellate Case: 22-2080     Page: 14     Date Filed: 09/12/2022 Entry ID: 5197220

explicitly approved in the Eighth Circuit in *Hillebrand v. M-Tron Industries, Inc.*, 827 F.2d 363 (8th Cir. 1987):

> The ADEA protects individuals who are at least forty but less than seventy years of age. 29 U.S.C. Sec. 631(a) (1982). Rein, therefore, was also in the protected age group. A plaintiff need not be replaced by a person outside the protected age group to make out a prima facie case under the ADEA; the plaintiff need only be replaced by a younger person. *See, e.g., Thornbrough v. Columbus and Greenville R.R. Co.*, 760 F.2d 633, 643 n. 14 (5th Cir.1985); *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1386-87 (11th Cir.), cert. denied, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).

*Hillebrand*, 826 F.2d at FN6.

With all facts taken in her favor, Ms. Connors clearly presented prima facie cases of discrimination based on both age and gender under these standards.

PROPOSITION II        Merit's "reasonable jury" argument is dependent on a highly defense-slanted reading of the facts, in contravention of summary judgment standards, and on continued conflation of post-hoc facts with facts actually considered and noted at the time of the hiring determination.

Merit makes no effort to discuss its "facts" in the context of any relevant summary judgment standard (i.e. facts taken in the light most favorable to the non-moving party). *See Hillebrand v. M-Tron Industries, Inc.*, 827 F.2d 363 (8th Cir. 1987),

> Summary rulings are the direct antithesis of the full and fair process found in an adversary proceeding. [citations omitted]. Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion. 3 Summary judgments

Appellate Case: 22-2080    Page: 15    Date Filed: 09/12/2022 Entry ID: 5197220

should seldom be used in cases alleging employment discrimination because of the special category in which Congress and the Supreme Court visualized these cases. Knowing that discrimination is difficult to prove by direct evidence, the Supreme Court has interpreted employment discrimination cases as requiring simplified proof from a claimant in order to create an inference of discrimination and thereby establish a prima facie case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 1824, 36 L.Ed.2d 668 (1973). Once the inference is created, the law is clear that the burden of production is placed on an employer to show a non-discriminatory reason. The plaintiff may then rely on his prima facie case or go further and attempt to show the defendant's reasons were pretextual. [citations omitted]

*Hildebrand*, 827 F.2d at 365.

Merit continues to refuse to address either its shifting causes for non-hiring or the fact that the factual time line simply does not support either its position or the District Court's findings. Appellant cannot reiterate strongly enough that Appellee has presented no evidence that any fact relating to her relationship to her supervisor was developed, considered, or known during her interview process. See discussion at 3, supra., Appellant's Brief at 14. Despite the clear conclusion that no such discussion occurred, Merit continues to assert, with no evidence in support that " Merit's central concerns regarding Ms. Connors have always been her disregard for her supervisors' instructions with respect to well production and her apparently casual approach to basic safety protocols." Appellee Brief at 19. This is simply demonstrably untrue. Nothing in Merit's EEOC filing indicates any supervisor-related basis for termination. Nothing in the hiring notes indicates any such concern. Even in Mr. Munger's testimony the only claimed "contemporaneous" basis

Appellate Case: 22-2080     Page: 16     Date Filed: 09/12/2022 Entry ID: 5197220

asserted regarding these concerns is a single statement about soaping wells that is directly contradicted by his notes.

In support of its contentions, Appellee relied heavily on an unsigned, undated, and unauthenticated "email" that does not even have a send header, purportedly from Mr. Munger to Ms. Lane regarding his hiring determination. (App. App. 1 R. Doc 37-1). See Fed. R. Civ. P. 56(e); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970) (unsworn statements are not admissible at summary-judgment stage of proceedings). And even if it were considered, the "email" is also not, by Appellee's admission, a statement contemporaneous with any hiring decision, but rather was claimed to have been presented by Munger at its earliest in response to questions by his supervisor regarding Appellee's EEOC complaint. (R. Doc 37 at 7-8). See also Appellant's Brief at 9-10. Notably, the reasons in this email, other than the clearly controverted claims regarding fire clothing, were not asserted as a basis for non-hiring asserted in EEOC proceedings. See Appellant's Brief at 17.

Appellant has demonstrated shifting and contradictory claims in basis for her non-rehiring, (including the spurious claims related to supervisor conflict as a basis for non-hiring), has shown affirmative consideration of age in that process, has demonstrated that Merit is disingenuous in claiming it did not have age information during the hiring process, has shown that the claimed "fire safety" basis is controverted at a basic factual level, has demonstrated that claims of "lack of

enthusiasm" are contrary to the contemporaneous (with hiring) notations in the hiring record, and has demonstrated that the hiring process applied to her differed from that applied to other applicants in length, thoroughness and availability of opportunity to explain purported discrepancies.

In terms of "consistency" as shown at 2, *supra*., Merit's position has been anything but consistent. Merit attempts to limit the issue of "consistency" to "this litigation" – ignoring the fact that its positions have shifted between initial notes (in which Ms. Connors was shown to be a good communicator, with suggestions for improvements to wells who dropped quite a bit of soap) to EEOC proceedings (where it was contended she was "unenthusiastic" and ignored fire safety) to current proceedings where it is contended that the core basis for termination was conflict with her prior supervisor. Merit has been anything but consistent in its claimed basis for termination **from** hiring **through** litigation.

Appellee's discussion of Giles France "notes" attempts to reframe, and avoid, the issue that it is the fact that no supervisor conflict was communicated (not the fact that France was, on supervisor direction, soaping certain of Ms. Connor's wells). Nothing in the notes relating to Giles France indicate any reason for his soaping of Kimberly Connor's wells, and Munger confirmed that the only reason France gave for soaping those wells was that he was told to do so. Appellee attempts to change the issue in its framing. Appellant Connors has never contended that France did not

15

tell Munger that he was soaping some of the wells that were on Ms. Connor's route. But nothing in any note indicates that any basis for this was communicated to the hiring personnel other than the fact that France was told to do so. And as noted above, nothing in the EEOC filings indicates that this had anything to do with Merit's claims relating to non-hiring. When the facts are taken in the light most favorable to Ms. Connors, a reasonable jury could easily determine that Merit has simply recognized the weakness of its "unenthusiastic and fire-safety" grounds for non-hiring, and constructed an after-the-fact justification for its hiring officers' illegal activity. *See e.g. Bassett v. City of Minneapolis*, 211 F.3d 1097, 1108 (8th Cir. 2000) (treating the fact that employer documented its criticisms of plaintiff "as much as six months after-the-fact" as probative of pretext), abrogated in part on other grounds by *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1061 (8th Cir. 1997) (holding jury could infer pretext where employer put criticisms in employee's file only after employee filed a discrimination charge).

Finally, the "ride-along" argument by Merit is simply wrong. **Mr. Munger** expressly testified that the ride-alongs typically took "an hour or two." (App. 90, 94 R. Doc. 28-2, at 23, 27). Ms. Connors stated affirmatively that her ride-along took 20 minutes. (App. 138, 267 R. Doc. 28-3, at 14), (R. Doc. 35-1, at 5). There is no hearsay in play in that testimony. Mr. Munger had knowledge of his ride-along

Appellate Case: 22-2080     Page: 19     Date Filed: 09/12/2022 Entry ID: 5197220

lengths, and Ms. Connors of hers.  This is the very definition of a controverted fact about how Ms. Connors was treated differently from younger male applicants..  How Merit can argue this is not disparate treatment is a mystery.  Appellee's argument about why ride-alongs might have been shorter in certain circumstances is notable for its lack of citation to any factual basis in the record.

## IV.   CONCLUSION

Ms. Connors has presented a clear prima facie case of gender and age discrimination.  In summary judgment, with all facts taken in her favor, a reasonable jury could find that:

1.      Merit energy's hiring officials both implicitly and expressly considered age in their hiring considerations.

2.      Merit energy documented no legitimate factual basis for non-retention of Ms. Connors until after Ms. Connors filed her EEOC complaint.

3.      The original basis asserted for non-hiring by Merit (lack of enthusiasm / fire safety) were not supported by any contemporaneous notes (which included notes on lack of enthusiasm for other applicants, but indicated Ms. Connors was a "good communicator" and made suggestions for well improvement) or documentation, and, based on conflicting testimony, the fire safety claim was not believable.

4.      None of the claimed "supervisor conflict" testimony was communicated to any hiring officer, that this asserted basis for non-hiring was not raised until the actual lawsuit here was filed, and that it is clearly an attempt to created a basis for non-hiring where none existed.

5. That Ms. Connors was passed over for retention in favor of "younger guys" with less experience, and male personnel with documented safety and well maintenance issues.

6. Merit's hiring officers did not provide Ms. Connors the same opportunities in the interview process either for a full ride-along, or to explain any concerns they had regarding alleged performance or safety issues.

7. That every claimed basis for non-hiring was developed by Merit long after the process and most of these *post-hoc* justifications are controverted by the hiring-contemporaneous record.

8. That the additional factors listed in Appellant's Brief at 30 to 34 all support a finding that any claimed basis for non-hiring here was clearly pretextual and based on documented and implicit discriminatory motives.

Because of the foregoing, and the arguments submitted in Appellant's Brief in Chief, as well as the arguments submitted by Amicus, the District Court's grant of summary judgment here should be reversed and this matter remanded for trial on the merits.

Appellate Case: 22-2080     Page: 22     Date Filed: 09/12/2022 Entry ID: 5197220

Submitted this 12th day of September, 2022,

*/s/ Jeremy B. Lowrey*
Jeremy B. Lowrey, Attorney at Law
    Arkansas Bar No. 2002153
Post Office Box 153
Sheridan, Arkansas 72150
870-329-4957
Facsimile: (479) 222-1459
jlowrey@centerlane.org

ATTORNEY FOR APPELLANT
KIMBERLY CONNORS


## V.    CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. Appellant's Brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) excluding the parts of the document exempted by Fed. R. App. P. 32(a)(7)(B)(iii), the document contains 4550 words.

2. Appellant's Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 (Office 365) in a size 14 Times New Roman font.

*/s/ Jeremy B. Lowrey*
Jeremy B. Lowrey

## VI.  CERTIFICATE OF COMPUTER COMPLIANCE

Counsel certifies that the brief and addendum have been scanned for viruses and are virus free.

*/s/ Jeremy B. Lowrey*
Jeremy B. Lowrey

iv

## VII. CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022 I electronically filed the foregoing Appellant's Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system, including:

**Michael B. Heister**
**Laura L. O'Hara**
Quattlebaum Grooms Tull Burrow PLLC
111 Center Street
Suite 1900
Little Rock, AR 72201

*/s/ Jeremy B. Lowrey*
Jeremy B. Lowrey